ELEANOR F. ANDERSON, Plaintiff-Appellant, v. JAMES FERRIS *et al.*, Defendants-Appellees.

Second District   No. 2—83—0905

Opinion filed October 12, 1984.

150

Dale W. Bruckner, of Peregrine, Stime, Newman & Ritzman, Ltd., of Wheaton, for appellant.

A.F. Mannina, of Marco & Mannina, of Downers Grove, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Eleanor F. Anderson, following a bench trial, appeals from the trial court's denial of her petition to set aside a quit-claim deed dated June 15, 1982, wherein defendant James Ferris transferred his interest in the marital residence to his wife, defendant Ruth N. Ferris. Plaintiff originally filed a separate suit against James Ferris on September 23, 1980, to recover damages in connection with the wallpapering and painting of plaintiff's home by James and obtained a judgment in her favor of $5,550 plus costs on June 23, 1982.

Plaintiff filed her petition instituting this action after attempting to execute on that judgment and learning that James Ferris had no assets with which to satisfy the judgment.

Plaintiff maintains on appeal that the trial court erred in applying the law of fraudulent conveyance to the facts of this case and should have set aside the transfer of James' interest in the marital residence to Ruth because it was made for no consideration and for the purpose of impairing plaintiff's rights as a creditor. Defendants counter that James had no interest in the property at the time of the transfer because a resulting trust in Ruth's favor had arisen at the time the property was originally purchased.

The following evidence was adduced at a bench trial. James Ferris, appearing as an adverse witness, stated he and his wife were married in 1947, and the marital residence located at 5627 South Garfield, Hinsdale, in which they still resided, was purchased in 1955. James' name was on the mortgage and the property title, and the property was jointly held until June 15, 1982. On that date, James, by quit-claim deed, transferred his interest in the residence to Ruth for no consideration. At the time the transfer was made, there was a lawsuit pending against James in which Eleanor Anderson was the plaintiff. On June 23, 1982, there was a judgment rendered in favor of plaintiff in the amount of $5,550 plus court costs. James said that his motivation in quit-claiming his interest in the house was that the "money that was put into the house for the most part was put in by wife, practically all of it, perhaps all of it including the down payments, the house was hers and it was intended to be hers all those years." James did not want the house to be subject to satisfaction of any judgment that might be rendered against him. He supposed that if plaintiff got a judgment against him, it could be enforced by a sale of the house.

James further testified that his earnings from his self-employment as a painter and decorator were used for business and living expenses, and living expenses included food, shelter, child, and clothing expenses. He did not recall making any mortgage payments himself, and may have or may not have. He often would turn his checks from his business over to his wife, and she would coordinate the family expenditures. There was no segregation of funds between James and Ruth, since James had neither a checking nor a savings account and funds that James turned over to his wife were deposited into her checking account.

On her own behalf, Ruth Ferris testified that a fire in 1979 destroyed all of their records. Around the time the house was pur-

chased, she received several thousand dollars from her mother that she spent on the house. She made the down payment at the time of the purchase. When Ruth attempted to obtain a mortgage from Mid-America, Mid-America would not give a woman a mortgage and insisted that her husband sign the mortgage and that his name be on the deed. Ruth stated that she made all the mortgage payments, and she identified checks drawn on her bank account, signed by her, for house payments that were dated from 1979 to the present. Throughout her working career, Ruth earned more than her husband James. His net earnings for the last four years after expenses ranged from $6,600 to $9,499, while her earnings were from $15,800 to $23,885. Ruth stated that it was her intention to keep her earnings separate from James' earnings and to keep her property separate from James' business. Two automobiles, a bank account and credit cards were in her name alone. She explained that the house had always been hers and the transfer in June of 1982 was to keep it separate from her husband's business. Until she met with counsel, she had understood that she could not take her husband's name off the property as long as the bank held the mortgage.

On cross-examination, Ruth stated that her husband would give her cash or checks from his business which on a number of occasions she deposited in her account. From her checking account she also would pay some of her husband's business expenses. While James was not a signator on the account, his name, along with Ruth's, was printed on the checks. Ruth identified checks which had been drawn by plaintiff and made payable to James for the work previously performed by him. These checks had been endorsed by James and deposited into Ruth's account, the same account from which mortgage payments were made.

At the close of the testimony, the trial court denied the petition to set aside the conveyance, finding that the evidence clearly showed that the parties never intended the home to be subject to the liability of James' business; that the intent was accomplished by the conveyance perhaps to the legal detriment of plaintiff; and that there was no evidence that plaintiff at any time relied upon that home as security for her contract with James Ferris.

■ Plaintiff contends on appeal that the conveyance should be set aside because it was made without consideration and for the purpose of impairing plaintiff's rights as a creditor. Fraudulent conveyances are those "made with the intent to disturb, delay, hinder or defraud creditors ***." (Ill. Rev. Stat. 1981, ch. 59, par. 4.) Illinois law distinguishes between conveyances that are fraudulent in fact and those

fraudulent in law. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791, 458 N.E.2d 193.) In fraud-in-fact cases, actual consideration has been given for the transfer and a specific intent to defraud must be proved. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791, 458 N.E.2d 193.) In contrast, when a conveyance is made for no or inadequate consideration, it is fraudulent in law: fraud is presumed (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791, 458 N.E.2d 193; *Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 62, 383 N.E.2d 631), and intent is immaterial. (*Birney v. Solomon* (1932), 348 Ill. 410, 415, 181 N.E. 318; *Till v. Till* (1967), 87 Ill. App. 2d 358, 361, 231 N.E.2d 641.) Here, although defendants' testimony that the transfer was made to shelter it from James' business liabilities would be sufficient evidence of intent to constitute fraud in fact, we must decide this case based on the principles of fraud in law, since James acknowledged that the conveyance was made for no consideration. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791, 458 N.E.2d 193.) While the trial court focused on intent in its findings, it was apparently referring to defendants' intent that the house should not be subject to James' business indebtedness, which is different than an intent to hinder plaintiff in the satisfaction of the judgment which had been rendered against James. Nevertheless, based on the foregoing analysis, emphasis on intent where the conveyance is fraudulent in law is misplaced.

To prove fraud in law, (1) there must be a voluntary gift; (2) there must be then existing or contemplated indebtedness against the donor; and (3) it must appear the donor did not retain sufficient property to pay his indebtedness. (*Mills v. Susanka* (1946), 394 Ill. 439, 448, 68 N.E.2d 904.) Here, since James received no consideration for the conveyance of his interest in the home, the transfer is deemed voluntary. (See *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791, 458 N.E.2d 193; *Till v. Till* (1967), 87 Ill. App. 2d 358, 361, 231 N.E.2d 641.) Plaintiff's pending suit against James for monetary damages is clearly a contemplated indebtedness, especially in light of James' testimony that he was concerned that a judgment against him in plaintiff's initial suit for damages could be enforced by a sale of the house. Defendants' answer admitted that James had no assets with which he could satisfy plaintiff's judgment. Given these facts, the transfer must be presumed fraudulent.

■ Where the conveyance is made by the debtor to his wife and the debtor is thereby rendered insolvent, the burden of dispelling the implications of fraud as against pre-existing creditors is upon the debtor and his wife. (*Thompson v. Williams* (1955), 6 Ill. 2d 208, 212,

127 N.E.2d 457.) The presumption of fraud can only be overcome by showing that after the transfer, the debtor retained ample assets to cover the debts (*Harting v. Jockers* (1891), 136 Ill. 627, 635, 27 N.E. 188; *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791, 458 N.E.2d 193), or that adequate consideration was given for the transfer (*Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 62, 383 N.E.2d 631), thus requiring that the case be analyzed under fraud-in-fact principles, where actual intent to defraud must be proved. (*Till v. Till* (1967), 87 Ill. App. 2d 358, 361, 231 N.E.2d 641.) Since defendants admitted in their answer that James did not have ample assets to satisfy the judgment and since James conceded at trial that the transfer was made for no consideration, the presumption of fraud must stand.

Defendants argue, however, that plaintiff's rights as a creditor were not impaired because James had no real interest in the property which plaintiff could attach. They contend that Ruth paid the down payment on the house and made all the mortgage payments and that James' name was on the mortgage and the property title only because Ruth could not obtain the mortgage otherwise. Thus, they conclude a resulting trust arose in Ruth's favor so that James had no ownership interest in the house.

A resulting trust is created by law and arises from the presumed intention of the parties, distilled from their conduct; it comes into being at the instant the title vests or not at all. (*Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 495, 240 N.E.2d 677.) A party seeking to establish a resulting trust has the burden of proving it by clear, convincing, unequivocal and unmistakable evidence. (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 356, 410 N.E.2d 23; *Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 495, 240 N.E.2d 677; *Kaibab Industries, Inc. v. Family Ready Homes, Inc.* (1983), 111 Ill. App. 3d 965, 975, 444 N.E.2d 1119.) Since the law surrounding resulting trusts was created to enforce the intent of the parties, certain rebuttable presumptions have evolved based on the relationship of the parties. (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 356, 410 N.E.2d 23.) For example, a presumption of gift arises where a spouse pays the purchase price but ownership is taken in joint tenancy with the other spouse. (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 356, 410 N.E.2d 23; *Ludwig v. Ludwig* (1952), 413 Ill. 44, 51, 107 N.E.2d 848.) The burden is upon one questioning the gift to overcome the presumption by clear, convincing, unequivocal and unmistakable evidence. *In re Estate of Wilson* (1980), 81 Ill. 2d 349, 357, 410 N.E.2d 23.

The basic evidence tending to show that defendants intended

Ruth to be the sole owner was their testimony that James' name was on the mortgage and deed only because Ruth could not procure a mortgage otherwise, that they always intended the house to be Ruth's, and that Ruth paid the down payment and made all the mortgage payments.

However, defendants' testimony concerning their original intent is not conclusive (see *Flynn v. O'Dell* (7th Cir. 1960), 281 F.2d 810, 812-15), and where the evidence is contradictory, the factual determinations necessary to decide the case are left to the trial court. (*Zack Co. v. Sims* (1982), 108 Ill. App. 3d 16, 27, 438 N.E.2d 663.) Those determinations will not be reversed unless they are against the manifest weight of the evidence. *Zack Co. v. Sims* (1982) 108 Ill. App. 3d 16, 27, 438 N.E.2d 663.

■ Unfortunately, the trial court did not expressly decide whether a gift had been made or, if the presumption of gift had been rebutted, whether a resulting trust had arisen. However, the necessary result of deciding either of those questions is a determination of whether James had an ownership interest in the marital home, and the trial court did implicitly make a finding as to ownership, which ultimately responds to the defendants' defense and settles these issues. The trial judge stated that "I think that the evidence is clear that the parties never intended the property to be *** subject of liability to the husband's business. I think that intent *** was accomplished by the conveyance *perhaps to the legal detriment of the Andersons.*" (Emphasis added.) We perceive that the trial court indicated by this language that it found James did possess an ownership interest in the property. Otherwise, plaintiff would have suffered no detriment by the conveyance, since James would have had no property interest to attach regardless of whether there had been a conveyance. Therefore, this apparent finding that James had an ownership interest in the property which he conveyed to Ruth to the detriment of plaintiff is supported by the evidence, and we need not reweigh the evidence to draw a different conclusion. See *Zack Co. v. Sims* (1982), 108 Ill. App. 3d 16, 27, 438 N.E.2d 663.

■ However, we also conclude from our examination of the record that as a matter of law the defendants have failed to establish their burden by clear, convincing, unequivocal and unmistakable evidence that a resulting trust was intended. The evidence discloses that defendants both lived in the house and held title to it in joint tenancy for over 25 years. James testified that his earnings went toward, among other things, shelter. While he stated he did not recall making any mortgage payments personally, his earnings were often deposited

in Ruth's checking account from which the mortgage payments were made.

Contrary to defendants' contention that they "exhibited the intent that all family property would be kept separate from the husband and his business," the evidence of their conduct reveals a consistent commingling of James' earnings into Ruth's checking account, the sole checking account of the family, from which mortgage and other family expenses were paid as well as James' business expenses. James had no separate checking or savings account for his business. It appears that Ruth managed the family financial affairs, including the receipts and disbursements from James' business. Thus, there is not any segregation of James' business income and expenses from family expenses which include the mortgage payments. James' transfer of his interest in the family residence approximately one week before trial of the original action against him and defendants' consistent conduct of commingling of the business and family financial affairs for 25 years as discussed above so completely refute the trial testimony of the defendants that Ruth was really intended to be the sole owner of the marital residence when originally purchased that, as a matter of law, a resulting trust has not been established by the clear, convincing, unequivocal and unmistakable evidence required.

■ Plaintiff also seeks an award of attorney fees, relying on *Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41, *Simon J. Carlson & Son, Inc. v. Fricke* (1963), 45 Ill. App. 2d 88, 195 N.E.2d 17 (abstract of opinion), and *Jones v. People* (1885), 19 Ill. App. 300, but upon analysis we believe that these cases are inapposite and do not provide authority for plaintiff's request. The general rule in Illinois is that in the absence of a statute or an agreement, the successful litigant in a civil action may not recover attorney fees or the ordinary expenses of litigation from his adversary. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488-89, 426 N.E.2d 1204; *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 274-75, 465 N.E.2d 139.) There is no applicable statute providing for attorney fees and, of course, no agreement here between the parties for such fees. While it has been stated that when an award of punitive damages is authorized, expenses and attorney fees may be considered in estimating the amount of damages but are not allowable in addition to the sum assessed as exemplary damages (*Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 843, 277 N.E.2d 769), this complaint neither specifically sought punitive damages nor has plaintiff cited us any Illinois authority which would authorize such damages for this type of action. Plaintiff is therefore not entitled to attorney fees.

For the foregoing reasons, we reverse the judgment and remand to the trial court for the limited purpose of voiding the conveyance and granting plaintiff such other relief as necessary to implement this decision.

Reversed and remanded with directions.

LINDBERG and HOPF, JJ., concur.