THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General of Illinois, Plaintiff-Appellee, v. GABY'S APPAREL, LTD., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 83—3074

Opinion filed May 7, 1985.

Sussman & Samson, of Chicago (Steven Samson and Paul J. Sussman, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (James J. Ayres, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Nina Gerrard, following a bench trial, appeals from the trial court's ruling that the security agreement executed between Gerrard and Gaby's Apparel, Ltd. (Gaby's), constituted a fraudulent conveyance. The sole issue raised on appeal is whether the court erred in finding that the execution of the security agreement constituted a fraudulent conveyance in an attempt to defeat the claims of Gaby's creditors.

The record reveals that Gaby's was a bridal boutique in Glenview, incorporated in September 1979. Bonnie Feldman Gaby (Feldman) was the president of Gaby's, which was dissolved on December 1, 1981. Nina Gerrard was a close friend of Feldman's.

On August 28, 1981, Gerrard filed a complaint against Feldman and Gaby's seeking an accounting, reformation, and injunctive relief. On February 24, 1983, the Attorney General filed a petition to intervene to set aside the security agreement executed between Gerrard and Gaby's as a fraudulent conveyance. The record shows no objection to this petition. The Attorney General also filed a verified complaint for injunctive and other relief alleging that Gaby's and Gerrard had engaged in acts and practices that violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). On June 29, 1983, the Attorney General filed 31 consumer complaints by Gaby's customers concerning refunds and orders in support of his complaint. Thereafter, the court entered a default judgment against Gaby's finding that Gaby's had engaged in deceptive acts and practices, ordering restitution for the consumers in the amount of $6,764.77, and assessing a civil penalty of $10,000.

At trial on the Attorney General's petition to intervene, it appeared that Gerrard deposited $11,000 into an account at the First National Bank of Winnetka (Winnetka Bank) in late 1980. The account was in Gerrard's name, with power of attorney vested in Feldman in order to pay back one of Gaby's investors. From late 1980 through August 1981, Gerrard, an owner and operator of a currency exchange, loaned various sums to Feldman. Gerrard also borrowed money from Belmont National Bank to lend to Feldman. Testimony concerning the total of these loans was in conflict. Feldman testified the amount of the loans was believed to be $40,000 and $50,000. Gerrard testified the amount loaned was approximately $71,500. No records or memoranda of these loans were introduced at trial. Feldman operated Gaby's and wrote checks for Gaby's on the account held in Gerrard's name at the Winnetka Bank. The statements first came to Gerrard's home, and they were given to Feldman. While operating her currency exchange, Gerrard worked parttime at Gaby's. Her duties included answering the telephone, speaking with manufacturers, and greeting customers.

In autumn 1980, an attorney met Feldman and Gerrard for the first time on the recommendation of an accountant that Feldman knew. The attorney recommended that Feldman and Gerrard execute a promissory note and security agreement to provide security for the past loans. The attorney then drafted a security agreement on January 1, 1981, which gave Gerrard a security interest in Gaby's assets. The security agreement, however, was not executed until July 8, 1981, by Gerrard and Feldman.

Feldman testified that during the period from December 1980 to July 1981, Gaby's was in financial difficulty and that there were several meetings between the attorney, Gerrard, and herself where they discussed Gaby's financial condition. Feldman also testified that the purpose of the security agreement was to enable Gerrard and Feldman to cut off Gaby's other creditors' rights and start a new corporation with the assets of Gaby's being unencumbered by the liabilities of Gaby's.

The attorney testified that the purpose of the security agreement was to protect Gerrard's interest. He also testified that in February or March, 1981, Gerrard loaned Gaby's money to pay several months of past due rent and that Gerrard knew of the problems with rent. The attorney denied that he had a conversation with Gerrard or Feldman where the cutting off of creditors' rights were discussed.

Gerrard testified that she had no knowledge of Gaby's financial condition prior to July 1981, that she had no knowledge of any judg-

ments against Gaby's, and that she had no meetings or conversations with Feldman and the attorney where the cutting off of creditors' rights was discussed. Gerrard also testified that she did not know until the trial that she had been listed as a director of Gaby's in the annual report prepared by the attorney.

In August 1981, the Winnetka Bank statement received by Gaby's reflected a $378.40 overdraft. However, the corporation continued to accept orders and take deposits from customers. On August 10, 1981, the attorney prepared and signed articles of incorporation for Glenview Bridal and Apparel, Ltd. (Glenview). On August 11, 1981, Gerrard opened a corporate checking account for Glenview at Belmont National Bank. On August 19, 1981, Gerrard removed inventory from Gaby's and took possession of all of Gaby's assets pursuant to the security agreement. The trial court found that the execution of the security agreement was a fraudulent conveyance in an attempt to defeat the creditors of Gaby's.

■■ ■ Defendant Gerrard argues on appeal that the security agreement executed between Gaby's and herself does not meet the requirements of a fraudulent conveyance pursuant to section 4 of the Statute of Frauds (Ill. Rev. Stat. 1981, ch. 59, par. 4). Under Illinois statutory law, an agreement constitutes a fraudulent conveyance where it is "made with the intent to disturb, delay, hinder or defraud creditors ***." (Ill. Rev. Stat. 1981, ch. 59, par. 4.) Illinois case law, however, distinguishes between conveyances that are fraudulent in law and those which are fraudulent in fact. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 458 N.E.2d 193.) In fraud-in-law cases, the conveyance is made for inadequate or no consideration (*Wilkey v. Wax* (1967), 82 Ill. App. 2d 67, 225 N.E.2d 813; *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 458 N.E.2d 193), fraud is presumed (*Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 470 N.E.2d 518; *Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 383 N.E.2d 631), and intent is immaterial (*Birney v. Solomon* (1932), 348 Ill. 410, 181 N.E. 318; *Till v. Till* (1967), 87 Ill. App. 2d 358, 231, N.E.2d 641). In contrast, actual consideration has been given for the transfer, and a specific intent to defraud must be proved in fraud-in-fact cases. (*Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 470 N.E.2d 518; *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 458 N.E.2d 193.) In the instant case, Gerrard argues that adequate consideration was given for the security agreement since the security agreement was made to provide for the loans to Gaby's. The trial court, however, did not focus on whether the security agreement was a fraudulent conveyance in law or fact

and found that the security agreement should be treated as an "investment or contribution" by one who is part of the corporation as opposed to a "loan" based on the evidence and testimony.

■■■ It is well settled that a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court unless the findings are manifestly against the weight of the evidence. *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518; *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958.) Additionally, where a cause is heard by a chancellor without a jury, his conclusions on the facts are entitled to the same weight as a jury verdict. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518.) Here, the evidence amply supports the trial court's conclusion. The record shows that Gerrard failed to produce any records supporting loans made by her to Gaby's. The testimony by Gerrard, Feldman, and the attorney stating the problems with rent, undercapitalization, the difficulty with cash flow, and the close relationship of Gerrard to the corporation all support the conclusion that this was more than merely another person lending money to a financially troubled corporation. Given these facts and circumstances, the trial court's ruling that the security agreement was a fraudulent conveyance to defeat the claims of the creditors was not against the manifest weight of the evidence. *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958; *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.