*In re* LIQUIDATION OF MEDCARE HMO, INC. (James Schacht, Acting Director of Insurance, as Liquidator of MedCare HMO, Inc., Plaintiff-Appellant, v. Katten Muchin and Zavis, Defendant-Appellee).

First District (3rd Division)   No. 1—95—2578

Opinion filed December 31, 1997.

44

Barry Gross and Cary E. Donham, both of Shefsky, Froelich & Devine, Ltd., of Chicago, for appellant.

Amy A. Hijjawi and Scott A. Semenek, both of Katten Muchin & Zavis, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

James Schacht, Acting Director of Insurance for the State of Illinois (the Director),[1] as liquidator of the estate of MedCare HMO, Inc. (Medcare), an Illinois-licensed health maintenance organization (HMO), brought this action to recover attorney fees paid to the law firm of Katten Muchin & Zavis (Katten Muchin). The Director argued that the fees were recoverable as a voidable preference under section 204 of the Illinois Insurance Code (215 ILCS 5/204 (West 1992)) (the Insurance Code) and as a fraudulent conveyance under the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 1992)). On December 22, 1994, the trial court granted Katten Muchin's section 2—615 motion to dismiss the fraudulent conveyance count (735 ILCS 5/2—615 (West 1994)) and, on June 21, 1995, granted summary judgment on the voidable preference count. The Director filed its notice of appeal from both rulings on July 21, 1995.

## I. Appellate Jurisdiction

Before reaching the merits of the instant appeal, we must first address Katten Muchin's argument that this court lacks jurisdiction to hear the Director's appeal from the section 2—615 dismissal of its fraudulent conveyance count. Katten Muchin contends that the December 22, 1994, order dismissing that count was a final and appealable order on that date and should have been appealed under Supreme Court Rule 304(b)(2) (155 Ill. 2d R. 304(b)(2)) within 30 days of its entry.

■ Generally, where multiple claims or multiple parties are

---

[1]After the complaint was filed, on July 15, 1995, Mark Boozell succeeded as Director of Insurance.

involved in an action, an appeal from a final judgment as to one or more but fewer than all of the parties or claims may be taken only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal. 155 Ill. 2d R. 304(a). However, under certain circumstances specified in Supreme Court Rule 304(b) appeals from final judgments that do not dispose of entire proceedings can be taken notwithstanding the absence of an express written finding of appealability by the trial court. One exception is a judgment or order entered in the administration of a liquidation that finally determines a right or status of a party. 155 Ill. 2d R. 304(b)(2). Orders within the scope of Supreme Court Rule 304(b) must be appealed within 30 days of their entry. See *McCaffrey v. Nauman*, 204 Ill. App. 3d 761, 562 N.E.2d 628 (1990) (stating that interlocutory appeal pursuant to Supreme Court Rule 304(b)(2) is mandatory); *In re Estate of Kime*, 95 Ill. App. 3d 262, 419 N.E.2d 1246 (1981).

■ Katten Muchin argues that the order of December 22, 1994, dismissing the Director's fraudulent conveyance count was an order entered in the administration of a liquidation that finally determined a right. We disagree. A mandatory appeal under Rule 304(b) can occur only when the judgment or order finally determines a right or status. *In re Estate of Devey*, 239 Ill. App. 3d 630, 607 N.E.2d 685 (1993). The ultimate right, not the theory upon which that right is premised, must be determined. Here, the Director sought recovery of the attorney fees paid to Katten Muchin on two alternative theories, fraudulent conveyance and voidable preference. Although the fraudulent conveyance theory had been adjudicated, Katten Muchin's right to retain the fees could not have been finally determined until the Director's alternative claim of voidable preference was adjudicated.

In reaching this conclusion we are persuaded by the decision of *In re Estate of Devey*, 239 Ill. App. 3d 630, 607 N.E.2d 685 (1993), which applied Supreme Court Rule 304(b)(1), a rule analogous to Supreme Court Rule 304(b)(2). Supreme Court Rule 304(b)(1) provides for the mandatory appeal from a judgment or order entered in the administration of an estate that finally determines a right or status of a party. In *Devey*, the administrator of an estate filed a petition for citation to recover the decedent's property obtained by the operator of a long-term care facility arguing that the decedent's contract with the operator violated the Life Care Facilities Act (Ill. Rev. Stat. 1987, ch. 111$^1$/2, par. 4160—1 *et seq.*). The court, on the administrator's motion for summary judgment, declared the decedent's contract with the operator void; and the operator sought to appeal that finding. The appellate court dismissed the appeal for lack of jurisdiction, find-

ing that the trial court's order lacked finality under Supreme Court Rules 304(a) and 304(b).[2] With respect to Supreme Court Rule 304(b), the court found that the summary judgment order did not finally determine the rights of either the operator or the estate to possession of the decedent's assets.

In *Devey*, while the court found the contract between the decedent and the operator void, such that the operator was not entitled to retain the assets it received thereunder, the court nevertheless found the operator's appeal premature because the rights of the parties to those assets had not been determined. Here, as in *Devey*, the rights of the parties to the monies paid to Katten Muchin were not finally determined when the trial court dismissed the Director's fraudulent conveyance count. The Director's right to recover the payment on the related but alternative theory of voidable preference had yet to be determined. Thus, the Director could not take an appeal on December 22, 1994, pursuant to Supreme Court Rule 304(b) when his fraudulent conveyance count was dismissed. The Director's appeal on July 21, 1995, after the trial court granted summary judgment on the voidable preference count, conferred jurisdiction on this court to review both the December 22, 1994, order and the June 21, 1995, order regarding the attorney fees paid to Katten Muchin.

## II. Merits of Appeal

### A. Background Facts

The facts are not in dispute. MedCare was an Illinois licensed health maintenance organization that filed for bankruptcy on June 3, 1992. On March 3, 1993, prior to that filing, the Illinois Director of Insurance issued a notice of impairment to MedCare stating that

---

[2]Although the order granting summary judgment contained an express finding of appealability, the court found that it did not have jurisdiction under Supreme Court Rule 304(a) because the rights of the parties to the assets transferred under the contract remained a material controverted issue. While not explained by the court, it would appear that the facility operator could be entitled to retain a portion of the decedent's assets on some other basis or theory of entitlement. If that were so, we would disagree with the court's rejection of jurisdiction on the basis of Supreme Court Rule 304(a) since that rule permits appeals from orders disposing of separate branches or theories of recovery when the requisite language is given by the trial court. See, *e.g., Cunningham v. Brown*, 22 Ill. 2d 23, 174 N.E.2d 153 (1961); *Rice v. Burnley*, 230 Ill. App. 3d 987, 596 N.E.2d 105 (1992). We fully agree, however, with the court's rejection of jurisdiction under Supreme Court Rule 304(b) in that the ultimate status or rights of the parties to the decedent's assets had not yet been determined.

MedCare was insolvent and giving MedCare 30 days to correct the impairment. On April 7, 1992, the Director issued an amended notice of impairment indicating that the impairment had worsened and, pursuant to MedCare's request, gave MedCare 60 days to correct the impairment. Through the month of May, MedCare did not correct its impairment, and a complaint for liquidation of MedCare was prepared by the Director. On June 3, 1992, before that complaint could be filed by the Director, MedCare filed a bankruptcy petition which, in accordance with the automatic stay provisions of the Bankruptcy Code (see 11 U.S.C. § 362(a) (1994)), prevented the Director's filing of the state-court complaint seeking liquidation.

The facts further show that on June 8, 1992, the Director filed a motion to intervene in the bankruptcy action and moved to dismiss the bankruptcy petition for lack of subject matter jurisdiction. The bankruptcy judge permitted the Director's intervention but on July 28, 1992, denied the Director's motion to dismiss. Also on that date, the court denied the Director's motion to stay proceedings pending appeal. On December 8, 1992, the United States District Court reversed the bankruptcy court, finding that the bankruptcy court lacked subject matter jurisdiction. The Court of Appeals for the Seventh Circuit affirmed the district court on June 30, 1993, finding that MedCare, a health maintenance organization, was the substantial equivalent of a domestic insurance company and, as such, was ineligible to be a chapter 11 debtor. *In re Estate of MedCare HMO*, 998 F.2d 436 (7th Cir. 1993).

On December 22, 1992, after the federal district court made its subject matter jurisdiction ruling, the Director filed a complaint for conservation of the estate of MedCare in the state court. The Director was subsequently appointed liquidator of MedCare on January 3, 1993. Pursuant to his powers as liquidator, the Director instituted the instant action against Katten Muchin seeking the return of attorney fees paid to Katten Muchin pursuant to orders entered by the bankruptcy court. Those fees related to Katten Muchen's representation of the MedCare Committee of Unsecured Creditors, a committee of the bankruptcy estate of Medcare. See 11 U.S.C. § 1102 (1994) (mandating the appointment of unsecured creditors' committees). That committee had selected Katten Muchin as its counsel, and the bankruptcy court had approved that appointment in a retention order entered on June 24, 1992.

According to the Director's amended complaint filed in the instant action, Katten Muchen received $250,000 between June 24, 1992, and September 14, 1992. As will be more fully discussed below, the Director sought recovery of those fees based upon theories of

fraudulent conveyance and voidable preference. The fraudulent conveyance count was dismissed for failure to state a cause of action pursuant to section 2—615, and the voidable preference count was dismissed pursuant to the grant of summary judgment in Katten Muchin's favor.

## B. Fraudulent Conveyance Count

■ A section 2—615 motion to dismiss is used to attack the legal sufficiency of a complaint. *E.g., Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 655 N.E.2d 1162 (1995). A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings that will entitle the plaintiff to recover. *E.g., Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 581 N.E.2d 44 (1991). When ruling on a motion to dismiss, all well-pleaded facts in the complaint and all reasonable inferences arising therefrom are admitted as true and are interpreted in a light most favorable to the plaintiff. *E.g., Jenkins v. Leininger*, 277 Ill. App. 3d 313, 659 N.E.2d 1366 (1995). Appellate review of a dismissal pursuant to section 2—615 is *de novo. E.g., Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 662 N.E.2d 1377 (1996). Here, the Director's fraudulent conveyance count was dismissed because it did not allege sufficient facts to support a cause of action under either section 5 or 6 of the Uniform Fraudulent Transfer Act (the Fraudulent Transfer Act) (740 ILCS 160/5, 6 (West 1992)).

■ Section 5 of the Fraudulent Transfer Act provides in pertinent part:

> "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5 (West 1992).

Section 6 of the Fraudulent Transfer Act provides in pertinent part:

> "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." 740 ILCS 160/6 (West 1992).

A creditor who establishes a fraudulent transfer under either of these provisions can bring an action to void the transfer to the extent necessary to satisfy his claim. 740 ILCS 160/8(a) (West 1994).

In support of his fraudulent conveyance count, the Director alleged the background facts discussed above. The Director also alleged that Katten Muchin was aware that MedCare was a licensed HMO subject to the Illinois Insurance Code provisions governing insolvent HMOs; that Medcare had been notified by the Department of Insurance, before filing its bankruptcy petition, that the Department would file a complaint for liquidation or conservation of assets; and that, had the bankruptcy petition not been filed, he would have filed a complaint for conservation of MedCare on or about June 3, 1992. The Director alleged that Katten Muchin, through its representation of the unsecured creditor's committee during the bankruptcy proceedings, "attempted to thwart the Department's efforts to regulate, rehabilitate or liquidate MedCare" and frustrated the distribution priorities established in section 205 of the Insurance Code (215 ILCS 5/205 (West 1992)) that would have favored MedCare's enrollees and other creditors. The Director further alleged that MedCare was insolvent at the time it paid Katten Muchin's legal fees and that Katten Muchin knew of that insolvency at the time of the transfer of monies to it. According to the Director, the compensation paid to Katten Muchin enabled Katten Muchin to obtain a greater percentage of its debt than other creditors in the same class.

■ To state a legally sufficient cause of action for fraudulent transfer in law, under section 6 of the Fraudulent Transfer Act, the plaintiff must allege: (1) a transfer made for inadequate consideration; (2) an existing or contemplated indebtedness owed by the transferor; and (3) the transferor's failure to retain sufficient property to repay his indebtedness. *Regan v. Ivanelli*, 246 Ill. App. 3d 798, 617 N.E.2d 808 (1993); see *Falcon v. Thomas*, 258 Ill. App. 3d 900, 629 N.E.2d 789 (1994). Fraud need not be alleged because it is presumed, and intent is immaterial. *People ex rel. Hartigan v. Gaby's Apparel, Ltd.*, 133 Ill. App. 3d 343, 478 N.E.2d 1043 (1985); *Anderson v. Ferris*, 128 Ill. App. 3d 149, 470 N.E.2d 518 (1984). The Director argues that he sufficiently alleged these elements by stating, respectively, (1) that MedCare transferred monies to Katten Muchin "without receiving reasonably equivalent value"; (2) that creditors, namely MedCare's enrollees, existed at the time of the transfers; and (3) that MedCare was insolvent at the time of the transfers and Katten Muchin knew this.

■ Here, while the Director's amended complaint alleges that MedCare transferred monies to Katten Muchin "without receiving reasonably equivalent value," such an assertion is conclusory and not supported in fact. As set forth in the Director's complaint, the payment to Katten Muchin was made pursuant to the order of the bankruptcy court and for services actually rendered by Katten

Muchin to the unsecured creditor's committee of the MedCare bankruptcy estate. The Director would argue, however, that the payment was made without the receipt of equivalent value because the bankruptcy court order requiring the payment was void due to the court's lack of subject matter jurisdiction. We disagree. Absent allegations that the bankruptcy court knew from the outset that it had no jurisdiction and that it colluded with Katten Muchin with respect to entry of orders for attorney fees, there can be no question of either overt intent or presumptive intent to cause a fraudulent transfer. At the time the order was entered, the bankruptcy court's jurisdiction may have been questionable but there had been no definitive determination. The court entered its order under the belief, albeit erroneous, that it had jurisdiction. Moreover, there can be no question that Katten Muchin performed services on behalf of the unsecured creditors' committee under color of authority of the bankruptcy court. The transfer of monies was with the imprimatur of the court, albeit erroneous, and was based upon services actually performed. While Katten Muchin's efforts on behalf of the committee may have been fruitless once jurisdiction in the bankruptcy court was found lacking, the Director did not allege that at the time Katten Muchin performed legal services those services were unnecessary. Thus, since a legal detriment was suffered by Katten Muchin (see, *e.g., Estate of Besinger v. Village of Carpentersville*, 258 Ill. App. 3d 218, 630 N.E.2d 178 (1994)), valuable consideration was received by the creditor's committee of MedCare's estate. As a result, MedCare received the equivalent value for its payment and the transfer was not fraudulent.

The Director also contends that his complaint sufficiently alleged a cause of action under section 5 of the Fraudulent Transfer Act for fraud in fact. The Director concedes that a fraud in fact claim requires allegations of specific intent to "disturb, delay, hinder or defraud." 740 ILCS 160/5 (West 1992). He argues, however, that the trial court incorrectly dismissed his claim because the complaint did not allege an intent to defraud. The Director contends that his amended complaint satisfied the intent requirement, even though it did not allege intent to defraud because it alleged an intent to hinder and delay payment to MedCare's enrollees, who would have been given priority over other unsecured creditors, such as Katten Muchin, under the Illinois liquidation scheme.[3]

---

[3]Under the Illinois Insurance Code, claims by policyholders and insureds, as well as claims of the various insurance guaranty funds and associations, receive priority over claims of general creditors. 215 ILCS 5/205(1) (West 1992).

In fraud-in-fact cases, since actual consideration has been given for the transfer, a specific intent to defraud must be alleged and proved. *Anderson v. Ferris*, 128 Ill. App. 3d 149, 470 N.E.2d 518 (1984). Here the Director has alleged an intent to hinder and delay payment to one class of unsecured creditors in favor of another class of unsecured creditors. In effect, the Director has alleged a preference. Under Illinois law, however, the mere preference of one or more creditors over others does not constitute a fraudulent transfer. *Crawford County State Bank v. Doss*, 174 Ill. App. 3d 574, 528 N.E.2d 436 (1988) (applying section 4 of "An Act to revise the law in relation to frauds and perjuries" (Ill. Rev. Stat. 1983, ch. 59, par. 4)). A debtor may prefer one creditor to another provided such preference is made in good faith with the intent to pay or secure the payment of a just indebtedness against him. *Thompson v. Williams*, 6 Ill. 2d 208, 127 N.E.2d 457 (1955). Indicia of fraud or lack of good faith are: the insolvency of the debtor; consideration for the conveyance; status of the judgment of the creditor who was not preferred; whether all the assets of the debtor are reduced to cash; and whether the asset conveyed is the only remaining unencumbered asset of the debtor. *Doss*, 174 Ill. App. 3d 574, 528 N.E.2d 436.

In *Crawford County State Bank v. Doss*, 174 Ill. App. 3d 574, 528 N.E.2d 436 (1988), the court considered whether preferences in favor of certain creditors, two banks, were made in bad faith and with intent to defraud a judgment creditor whose judgment was imminent at the time of the conveyances to the banks. The facts alleged on summary judgment motion showed that the conveyances of stock to the banks were made for consideration of equal value; the debtor was insolvent; the judgment creditor's judgment was imminent; and the debtor retained other assets, although the transactions greatly depreciated the debtor's assets. The court found, however, that no fraud arose, stating:

" 'The transfer is not subject to attack by reason of knowledge on the part of the transferee that he is preferred to other creditors, nor does the transferee lack good faith because he knew his debtor's purpose to prefer or because he actively sought the preference. Neither can the transfer be attacked on the ground that the creditor knew that the transferor was insolvent, that the collection of the claims of other creditors would be hindered or defeated, or that the debtor intended to defeat the collection of their claims. Knowledge on the part of the creditor receiving the preference that the debtor has acted with fraudulent intention is immaterial if the creditor has done nothing except to receive pay-

ment of his claim.' " *Doss*, 174 Ill. App. 3d at 581, 528 N.E.2d at 440-41 quoting 37 Am. Jur. 2d *Fraudulent Conveyances* § 89, at 772-73 (1968). Accordingly, the court concluded that no fraud arose because of knowledge by the banks that the debtor was insolvent, intended to prefer them, intended to hinder other creditors, or attempted to defraud other creditors.[4]

Here, as in *Doss*, the Director alleged that the payment of attorney fees to Katten Muchin was made with an intent to hinder and delay payment to MedCare's other creditors, its enrollees. He alleged that Katten Muchin knew MedCare was insolvent at the time the transfer was made, and that "by accepting the transfers from Med-Care, [Katten Muchin] actively participated *** in a scheme" to hinder and delay repayment of the claims of MedCare's enrollees. These allegations do not sufficiently allege fraudulent intent; they allege preference. The assertions that Katten Muchin knew of Med-Care's insolvency, knew that it was being preferred over other creditors, and knew that its payment would hinder MedCare's payments to its enrollees do not establish fraudulent intent. *Doss*, 174 Ill. App. 3d 574, 528 N.E.2d 436. Nor does the Director's reference to "scheme" rise to the level of collusive conduct that could establish bad faith and fraudulent intent under certain circumstances. See *Wilkey v. Wax*, 82 Ill. App. 2d 67, 225 N.E.2d 813 (1967) (finding husband and wife had colluded to defraud judgment creditor by entering into property settlement agreement). The Director has not alleged that Katten Muchin conspired with MedCare. Instead, based upon the allegations in the Director's complaint, it is clear that Katten Muchin was not retained by MedCare; that Katten Muchin did not file MedCare's bankruptcy petition; that Katten Muchin was retained after Med-Care filed its bankruptcy petition; that Katten Muchin was retained to represent a committee of unsecured creditors in accordance with bankruptcy court rules and procedures; and that Katten Muchin represented the interests of that committee, albeit arguing in favor of the bankruptcy court's subject matter jurisdiction and against the interests of MedCare's enrollees; and that Katten Muchin was entitled to payment for its services despite its failure to obtain a

---

[4]While not here relevant, the court in *Crawford County State Bank v. Doss*, 174 Ill. App. 3d 574, 528 N.E.2d 436 (1988), reversed the summary judgments in favor of the defendant banks on the fraudulent conveyance counts and remanded the case for further proceedings to determine whether the initial conveyances of the stock to the debtor's wife (who later conveyed the stock to the banks) were themselves fraudulent, in that they were gratuitous, so as to taint the subsequent conveyances to the banks.

favorable ruling on jurisdiction. These allegations do not establish a scheme by MedCare and Katten Muchin to delay, hinder or defraud MedCare's enrollees. They establish a good-faith preference of one creditor over another. Thus, the Director's amended complaint fails to alleged sufficient facts of fraud in fact to bring it within section 5 of the Fraudulent Transfer Act.

## C. Voidable Preference

The Director next contends that the trial court erred in granting summary judgment on his voidable preference count. In that count, the Director alleged that between June 24 and September 14, 1992, MedCare transferred $250,000 to Katten Muchin thereby enabling Katten Muchin to receive a greater percentage of its debt than other creditors. The Director alleged that Katten Muchin knew MedCare was insolvent and had reasonable grounds to believe that the transfer was a preference voidable under section 204 of the Insurance Code (215 ILCS 5/204 (West 1992)).

In its motion for summary judgment, Katten Muchin stated that the payments it received for its bankruptcy representation occurred on June 26, July 2 and August 4, 1992. Katten Muchin argued that these payments were not voidable preferences within section 204 of the Insurance Code because they occurred more than four months prior to December 22, 1992, the date the Director of Insurance filed his state-court complaint for conservation of MedCare's estate.

■ At the time of the alleged payments to Katten Muchin, section 204 of the Insurance Code provided in pertinent part:

"(2) Any transfer of *** any property of any company made or created within four months prior to the filing of a complaint under this article, which gives to any creditor or policyholder or enables him to obtain a greater percentage of his debt than any other creditor or policyholder in the same class, which is accepted by a creditor or policyholder having reasonable cause to believe that such a preference will occur, shall be voidable. ***

(3) *** [E]very person receiving any property of, or cash surrender from, such company or benefit thereof, as a result of a transaction voidable under subsection (2) shall be jointly and severally liable therefor and shall be bound to account to the Director as rehabilitator, liquidator or conservator as the case may be." Ill. Rev. Stat. 1991, ch. 73, par. 816.

It is undisputed that the payments to Katten Muchin that the Director seeks to recover as voidable preferences were made more than four months before the Director filed his conservation action. The Director first argues on appeal that section 204's four-month preference period was tolled by section 13—216 of the Code of Civil

Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—216 (now 735 ILCS 5/13—216 (West 1996))). That provision states:

> "When the commencement of an action is stayed by injunction, order of a court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for commencement of the action."

The Director argues that the Bankruptcy Code's automatic stay of any proceedings against MedCare, which became effective when MedCare filed its bankruptcy petition (see 11 U.S.C. § 362(a) (1994)), was the type of stay referred to in section 13—216 of the Code of Civil Procedure. We disagree.

■ As can be gleaned from its language, section 13—216 extends the time within which an action shall be *commenced* by tolling the running of the applicable statute of limitations during the time period that the stay is in effect. In the instant case, the Director does not rely on section 13—216 to extend the time within which he could have filed his action against Katten Muchin. The statute of limitations for that action, as provided in the Insurance Code, is two years after entry of the order for liquidation or rehabilitation. See 215 ILCS 5/194 (West 1992). Instead, the Director relies on section 13—216 to expand the statutory time period for voidable preferences and cites two cases to support such an expansion. Both of those cases involved the time within which to commence lawsuits when stays were pending.

In the first case cited by the Director, *In re Pettibone Corp.*, 110 B.R. 848 (Bankr. N.D. Ill. 1990), an automatic stay went into effect upon the debtor's filing of a bankruptcy petition. One personal injury action had been filed in the Illinois state court against the debtor before the bankruptcy petition had been filed. After the stay was lifted, the debtor moved to dismiss the personal injury action as being time-barred because the two-year statute of limitations period had expired. The issue before the court was whether the personal injury plaintiff had lost his right to refile his action against the debtor after the stay had been lifted by the bankruptcy court. The court applied the tolling provision of section 13—216 of the Illinois Code of Civil Procedure and found that the personal injury plaintiff had approximately 17 months remaining after the stay was lifted to refile his personal injury action. However, in the interest of justice and judicial economy, the court *sua sponte* annulled the stay pursuant to sections 105 and 363(d) of the Bankruptcy Code to avoid the necessity of refiling the plaintiff's action.

The second case cited by the Director also dealt with the issue of whether an action had been timely commenced. In that case, which

is nonpublishable (see Vitaich v. City of Chicago (N.D. Ill. August 16, 1995)), the court relied upon section 13—216 to extend the time within which the plaintiffs could amend their action to add certain defendants. The court held that the trial court's stay of proceedings prevented the plaintiff from acquiring enough information about the additional defendants to satisfy the requirement of Rule 11 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 11) that the information in pleadings be certified as being well grounded in fact. As a result, the statute of limitations was tolled as to those defendants. See also *Doe v. Bobbitt*, 698 F. Supp. 1415 (N.D. Ill. 1988), *rev'd on other grounds*, 881 F.2d 510 (7th Cir. 1989) (statute of limitations tolled as to one defendant during stay of discovery where stay prevented plaintiffs' acquisition of information about that defendant).

Both of the cases cited by the Director applied section 13—216 to toll a statute of limitations. Here, unlike in the two cases cited by the Director, there is no issue concerning the tolling of the applicable statute of limitations. The Director's lawsuit against Katten Muchin was timely commenced within the applicable statute of limitations. As section 13—216 concerns the commencement of lawsuits and has been applied only in that context, it is not applicable here.

The Director would argue, however, that the four-month preference period is a statute of limitations that was subject to tolling during the bankruptcy automatic stay. In support of this argument, the Director cites *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 486 N.E.2d 893 (1985). That case discussed the 35-day statutory time limit for filing an administrative review action (see Ill. Rev. Stat. 1983, ch. 110, par. 3—103 (now 735 ILCS 5/3—103 (West 1996))). The issue before the court was whether the 35-day time period was a statute of limitations that could be waived or whether it was jurisdictional and not subject to waiver. According to the court, if the time limit was a condition of the liability itself and not of the remedy alone, it was jurisdictional. If the time limit fixed only the time within which the remedy for a particular wrong could be sought, it was a statute of limitations. *Fredman Brothers*, 109 Ill. 2d at 209, 486 N.E.2d at 895. The court found that the 35-day time limit in the Administrative Review Law was jurisdictional because it was an inherent element of the right to seek administrative review. See also *Huett v. Illinois Central Gulf R.R. Co.*, 268 Ill. App. 3d 494, 644 N.E.2d 474 (1994) (distinguishing statute of limitations from a time limit as a condition of liability). *Cf. Telegraph Savings & Loan Ass'n v. Schilling*, 105 Ill. 2d 166, 473 N.E.2d 921 (1984) (stating that 10-day period to file action against commissioner of savings and loan associations (Ill. Rev. Stat. 1979, ch. 32, par. 852) was a statute of limitations that was tolled when the action was removed to federal court).

The statutory time provisions reviewed in *Fredman Brothers* and in *Schilling* are distinguishable from the time period at issue here in that they governed the time within which an action had to be commenced whether for jurisdictional or statute of limitations reasons. Here, however, the statute in question does not govern the time within which an action should have been commenced nor does it fix the time within which the remedy for the wrong could be sought. Rather, the statute simply provides that transfers made within four months of the filing of the Director's complaint are deemed voidable in that they give an unfair advantage to a certain class of creditors or policyholders.

The liberality that courts have shown with respect to extending the statute of limitations period during the period of a stay would not by any means be correspondingly applicable to the four-month period for voidable preferences which serves a wholly different purpose. As can be gleaned from the case law, statutes of limitation are not favored because they curtail one's right to seek redress in the courts for a wrong. See, *e.g., Yette v. Casey's General Stores, Inc.*, 263 Ill. App. 3d 422, 635 N.E.2d 1091 (1994). The impact of statutes of limitation has been curtailed by tolling provisions, discovery rules, procedural rules requiring pleading of statutes of limitations as affirmative defenses, and waiver. No such policy would appear to exist with respect to voidable preferences.

The legislature has chosen a four-month window within which to question the dealings of a financially troubled insurance company with respect to its treatment of its creditors and policyholders. The legislature apparently believed that during the four-month period prior to the Director's filing of a complaint against the insurance company, which would have been preceded by notices of impairment, the insurance company would have had knowledge of its weakened financial condition and impending insolvency and could have begun to favor certain creditors or policyholders over others within the same class. As stated above, this four-month period does not fix the time to seek a remedy for a wrong; it establishes the wrong. Thus, since under the facts here presented the preference occurred outside the four-month period, the Director could not establish his voidable preference claim and summary judgment was properly granted.[5]

[5]In view of our holding that the statutory four-month time period for voiding preferences is not a statute of limitations, we need not discuss the Director's argument that Katten Muchin should be estopped from asserting the statute of limitations to bar the Director's action. Even if we were to

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and CAHILL, J., concur.

reach the Director's estoppel argument, we would find an absence of conduct by Katten Muchin that caused the Director's forbearance in filing the instant lawsuit. See *Senior Housing, Inc. v. Nakawatase, Rutkowski, Wyns & Yi, Inc.*, 192 Ill. App. 3d 766, 549 N.E.2d 604 (1989). As discussed earlier, Katten Muchin did not represent MedCare, did not advise MedCare to file its bankruptcy petition, and did not file MedCare's bankruptcy petition, which effectuated the automatic stay and prevented the Director from filing his complaint for liquidation and conservation. Katten Muchin became counsel to a creditor's committee formed pursuant to bankruptcy court proceedings after MedCare filed its bankruptcy petition. Katten Muchin did nothing by words or conduct to induce the Director's forbearance from filing suit. In *Senior Housing*, the defendant acted in a conciliatory manner and initially took responsibility for repair work sought by the plaintiff, thereby causing the plaintiff to forbear from filing suit. Here, the Director could not rely on Katten Muchin's actions as a reason for forbearing from filing its preference action. Katten Muchin was never aligned with the Director and, as the Director admits, opposed the Director's motion to dismiss the bankruptcy proceedings for lack of subject matter jurisdiction. Thus, there is nothing in the record that would connect the Director's forbearance with any conduct by Katten Muchin.