ZINTER, Justice
(concurring in result).
[¶ 39.] I respectfully disagree with those parts of the Court’s opinion concluding that reasonable equivalent value was not given for the transfer of BHG’s assets. See supra Part A (actual fraud) and Part B (constructive fraud). I do so because those Parts analyze the reasonable equivalent value question from the perspective of Glimcher, the creditor challenging the transfer. See supra ¶¶ 20, 26. In my view, the reasonable equivalent value question should not be viewed from the perspective of the unsecured creditor challenging the transfer. Rather, the question must be viewed from the perspective of the debtor, the debtor’s estate, and all unsecured creditors. And, when viewed from that perspective, reasonable equivalent value was given because both BHG and the unsecured creditors benefited from this transfer. Therefore, constructive fraud cannot be established. Nevertheless, I concur in result because, when the remaining “badges of fraud” are considered, actual fraud was established.
Reasonable Equivalent Value— Constructive Fraud
[¶40.] In concluding that constructive fraud was established, the Court reasons that the transfer, from the perspective of Glimcher, conveyed no benefit to BHG or other creditors. Supra ¶ 26 (emphasis added). This view, prefacing the analysis from the perspective of the challenging unsecured creditor, overlooks the statutory definitions of reasonable equivalent value and cases interpreting the UFTA. It also impermissibly interjects the concept of preferences into § 4(a)(1) and (2) of the UFTA.
[¶ 41.] The Washington version of the UFTA on constructive fraud requires that the reasonable equivalent value question be analyzed solely from the perspective of the debtor. RCWA 19.40.041(a)(2) (UFTA § 4(a)(2)) provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: ...
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation....
Id. (emphasis added). The UFTA comment to the Washington definition of value, RCWA 19.40.031(a) (UFTA § 3(a)), further clarifies the proper perspective. That comment makes no reference to the challenging creditor’s point of view. Rather, it confirms that reasonable equivalent value is to be determined from the perspective of all unsecured creditors and the debtor’s estate. The comment explains:
“Value” is to be determined in light of the purpose of the Act to protect a debtor’s estate from being depleted to the prejudice of the debtor’s unsecured creditors. Consideration having no utility from a creditor’s viewpoint does not satisfy the statutory definition.
UFTA § 3 cmt 2 (emphasis added).
[¶ 42.] Courts interpreting the UFTA also recognize that the proper focus is on the net effect of the transfers on the debt- or’s estate and the funds available to pay all of the unsecured creditors.
*829 [T]he proper focus is on the net effect of the transfers on the debtor’s estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.
In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479, 484 (4thCir.1992).[9] Today the Court also acknowledges the proper focus in restating the purpose of UFTA: “The purpose of the UFTA is to protect a debtor’s estate from being depleted to the prejudice of the debtor’s unsecured creditors.” Supra ¶ 9 (emphasis added). Therefore, our analysis should focus only on whether BHG (the debtor), its estate, and the unsecured creditors as a group received reasonably equivalent value in exchange for the transfer to Coleman.
[¶ 43.] When viewed from this perspective, reasonable equivalent value was given because there is no dispute that “an antecedent debt [was] ... satisfied” for value exceeding that debt. RCWA 19.40.031(a) (UFTA § 3(a)). See also ¶ 25, supra. BHG transferred approximately $300,000 in assets for the forgiveness of approximately $600,000 in unsecured debt. See supra ¶¶ 5, 25. Consequently, this transfer reduced the debtor’s estate’s total unsecured debt by approximately $300,000 more than the value of the assets transferred. Considering this $300,000 net improvement in the estate’s unsecured debt, BHG and all remaining unsecured creditors received value even if Glimcher did not personally benefit.
[¶ 44.] The Court’s focus on Glimcher’s perspective is also misplaced because it interjects the concept of preferences into the analysis. Concededly, the transfer to Coleman was preferential when viewed from the perspective of Glimcher, apparently the only unsecured creditor who received nothing from all of the transfers. However, viewing the question from the perspective of an unsecured creditor who receives less than the others improperly interjects the concept of preferences into the constructive fraud provisions of RCWA 19.40.041(a)(2), (UFTA § 4(a)(2)).[10]
[¶ 45.] This case deals with fraudulent transfers, not preferences, and preferential transfers are not inherently fraudulent. In construing the UFTA generally, we have recognized this rule stating: “[D]ebt-ors may generally prefer one creditor over another in applying assets to discharge their obligations[.]” Prairie Lakes Health Care Sys., Inc., 1998 SD 99, ¶ 14, 583 N.W.2d at 413.[11] Other courts, in discussing both constructive and actual fraud, also recognize that some creditors may be preferred over others. See Liquidation of MedCare HMO, Inc., 294 Ill.App.3d 42, 52, *830 228 Ill.Dec. 502, 689 N.E.2d 374, 381 (1997) (concluding that when analyzing fraud under similar provisions of the UFTA, “the mere prefex-ence of one or more creditors over others does not constitute a fraudulent transfer.”); Garton v. Garton, 533 N.W.2d 828, 832 (IA 1995) (construing the common-law “badges of fraud” that underlie the UFTA, noting that, “a debtor may prefer one creditor over another.”); In re Stein, 208 B.R. 209, 215 (D.Or.1997) (discussing constructive fraud and stating: “A debtor may prefer one creditor over another....”).
[¶46.] Therefore, even if this were a preferential transfer when viewed from Glimcher’s perspective, that does not establish a lack of reasonable equivalent value and a fraudulent transfer. When viewed from the proper perspective of the debtor, its estate, and the unsecured creditors generally, reasonably equivalent value was given. And because reasonable equivalent value was given, Glimcher cannot establish constructive fraud in this proceeding. As the Court notes, the “absence of reasonably equivalent value is the essential component of constructive fraud. Unless it is proven, constructive fraud cannot be found.” Supra ¶ 19; RCWA 19.40.041(a)(2).
Reasonable Equivalent Value— Actual Fraud
[¶47.] For the foregoing reasons, the Court also errs in concluding that Glimcher established the lack of reasonably equivalent value “badge of fraud” under RCWA 19.40.041(b)(8). That provision, like the constructive fraud provision, requires an examination of the reasonably equivalent value question from the perspective of the debtor. It provides:
The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
Id. The Court, however, again views the question solely from the perspective of Glimcher, concluding that this badge of fraud was established because “Glimcher was worse off because BHG’s funds to pay Glimcher were totally depleted.” Supra ¶ 20 (emphasis added).
[¶ 48.] Nevertheless, for the other reasons expressed by the Court, the remaining “badges” established fraud. In my view, this conclusion is especially compelled because, as the Court notes, this transfer was accomplished between insiders: the joint owners of BHG and Coleman. See supra ¶ 13 (quoting UFTA § 4 cmt 5). See also ¶¶ 13-18, 22. “Transactions involving corporations and their executives or corporations under the common control of the same officers and directors are to be regarded with skepticism by the courts and closely scrutinized.” Snyder Elec. Co. v. Fleming, 305 N.W.2d 863, 867 (Minn.1981). “The relationship between the parties is a significant consideration.” New Horizon Enterprises, Inc. v. Contemporary Closet Design, Inc., 570 N.W.2d 12, 16 (Minn.App.1997).
[¶ 49.] Considering this relationship and the other badges of fraud discussed by the Court, I agree that the circuit court erred as a matter of law and actual fraud was established.

. Bigelow ultimately held that those transfers were not fraudulent because they did not result “in the depletion of the bankruptcy estate ... [t]he transfers by the debtor served simply as repayment for money received.” Id. at 485.

. It also improperly interjects the concept of preferences into the actual fraud provisions of RCWA 19.40.041(a)(1), (UFTA § 4(a)(1)).

. This Court did note that some preferences may be voided under SDCL 54-8A-5(b) (UFTA § 5(b)), which provides:
A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Id.

Washington has the same provision codified at RCWA 19.40.051(b). However, this preference provision has not been raised or argued on appeal.