JAMES POPP *et al.*, Plaintiffs-Appellants, v. ROYCE DYSLIN *et al.*, Defendants-Appellees.

Second District   No. 84—1212

Opinion filed November 18, 1986.

William P. Suriano, of Jenner & Block, of Chicago, for appellants.

Michael C. Funkey, of Alschuler, Putnam, McWethy, Funkey & Lewis P.C., of Aurora, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

On September 7, 1982, James Popp and Jim Popp Builders, Inc., filed a complaint against Royce Dyslin and the Aurora National Bank (bank). Following a hearing, the trial court granted the bank's motion to dismiss and allowed plaintiffs to amend their complaint. Thereafter, counts II through V of the plaintiffs' seven-count amended complaint were dismissed by the trial court. This terminated the litigation against the bank. On appeal James Popp (plaintiff) contests the order dismissing the action against the bank. Jim Popp Builders, Inc., which filed for bankruptcy, and Royce Dyslin, whose whereabouts are unknown, are not parties to this appeal.

The complaint alleged the following relevant facts. Royce Dyslin approached plaintiff and expressed an interest in leasing space in a shopping center in order to operate a Mexican restaurant. Plaintiff agreed to make improvements to the leased premises and to enter into a lease with Dyslin provided that Dyslin was able to procure a federally insured Small Business Administration (SBA) loan from the bank.

As part of its participation in the SBA loan program, the bank was obligated to investigate the financial affairs of Dyslin. The bank was prohibited from extending an SBA loan unless it determined that there was a reasonable assurance that the loan would be repaid. This determination was based on an investigation of Dyslin's past earnings record, future prospects, and management capability. In addition, Dyslin was required by law to contribute enough capital to assure a sufficient personal financial interest in its success. The bank was required to administer the SBA loan to insure that it was used for the intended purpose.

Plaintiff and Dyslin met with officials from the bank on September 11, 1980. During the meeting, plaintiff advised the bank that he was considering making improvements to the leased premises and then leasing the premises to Dyslin. Plaintiff also described his proposed improvements and the cost of those improvements. He told the bank that he would not make improvements or lease the premises to

Dyslin unless the bank determined that Dyslin met the SBA loan qualifications and extended an SBA loan to Dyslin. Plaintiff alleged that he specifically advised the bank that he was relying on its investigation of Dyslin and its determination that Dyslin met the loan qualifications. In response, the bank represented to plaintiff that SBA loan funds were available and that Dyslin would be investigated to determine whether he met the legal requirements for an SBA loan.

Soon thereafter, Dyslin told plaintiff that the bank had reviewed and approved his SBA loan application for the purpose of constructing improvements on the premises. The bank orally confirmed Dyslin's representations and advised plaintiff that sufficient SBA loan funds would be forthcoming to pay for the improvements.

Based on the bank's and Dyslin's representations, Jim Popp Builders entered into a written lease and a construction agreement with Dyslin. In essence, the agreements extended credit to Dyslin. During the time plaintiff expended monies or extended credit to Dyslin, he advised the bank of his expenses. Plaintiff also asked whether the SBA loan proceeds would provide sufficient funds to insure payment. The bank assured plaintiff that it had investigated Dyslin, Dyslin met the SBA loan requirements, and sufficient funds were available to cover plaintiff's expenditures. Plaintiff alleged that he relied on those statements in making and continuing to make improvements to the leased premises, and based on his conversations with the bank, the bank knew that plaintiff was relying on its representations and that they were untrue.

On April 9, 1981, plaintiff received written notice confirming that the bank and Dyslin had entered into an SBA loan agreement. Based on plaintiff's conversations with the bank, plaintiff alleged the bank knew that its April 9, 1981, confirmation would induce plaintiff to expend additional monies for improvements on the leased premises. The bank continued to assure plaintiff that there would be sufficient funds from the SBA loan proceeds to cover plaintiff's expenditures.

The complaint also alleged that the bank did not properly investigate Dyslin. Had it done so, the bank would have discovered that Dyslin had invested no money in the project; he had submitted false and forged financial documentation; he had a history of business failures; he had used business funds improperly and for his own personal benefit; and he did not own sufficient assets to repay the SBA loan. The project collapsed when Dyslin disappeared without paying plaintiff, and the bank refused to make payment on plaintiff's demand.

Plaintiff's amended complaint asserts seven counts. Counts I and VI are against Dyslin. Counts II through V are against the bank.

Count II alleges that the bank intentionally misrepresented, among other things, that it had complied with Federal regulations in approving Dyslin's loan applications. Those misrepresentations induced plaintiff to make improvements to the leased premises and to extend credit to Dyslin. Count III alleges that the bank negligently misrepresented, among other things, that it had complied with the same Federal regulations. Count IV alleges that plaintiff was a third-party beneficiary of the SBA loan agreement pursuant to which the SBA loan proceeds were distributed. Count V alleges that the bank was negligent in its dealings with plaintiff. Count VII was voluntarily dismissed by plaintiff.

On December 5, 1984, the circuit court dismissed all four counts asserted by plaintiff against the bank. Despite plaintiff's request, the trial court refused to explain its decision and refused to make any findings of fact or to state its conclusions of law. Plaintiff's notice of appeal was timely filed.

■ Since the trial court's order was general, not specifying any grounds for its decision to dismiss despite plaintiff's request, this court must review the issues raised in the motions and raised on appeal. (*Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 407.) Placing in the record the reasons for the final order would benefit this court and the parties as well as contribute to judicial efficiency. 88 Ill. App. 3d 406, 407.

■ It is generally recognized that a section 2—615 (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) motion to dismiss attacks only the legal sufficiency of the complaint and should be decided only upon the allegations set forth therein. (*Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 131.) The motion should be granted if it is clear that plaintiffs can prove no set of facts under the pleadings which would entitle them to relief. *Alper Services, Inc. v. Wilson* (1980), 85 Ill. App. 3d 908, 911.

In considering a motion to dismiss, the trial court must accept as true all facts well pleaded as well as reasonable inferences which can be drawn from those facts. (*Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 438.) Pleadings should be liberally construed with a view to doing substantial justice between the parties. Ill. Rev. Stat. 1983, ch. 110, par. 2—603(c).

Plaintiff first contends that the trial court erred in dismissing count II of his amended complaint because it pleads every element of a cause of action for fraudulent misrepresentation and supports those allegations with specific facts. We agree.

■ The requisite elements of a cause of action for fraudulent mis-

representation are well established in this State. The six factors are: (1) the representation must be a statement of material fact; (2) it must be untrue; (3) the party making the statement must know or believe it to be untrue; (4) the person to whom the statement is made must believe and rely on it and have a right to do so; (5) it must have been made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement is made must lead to his or her injury. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286; *Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, 335.

Count II of plaintiff's complaint alleges: (1) that the bank assured plaintiff that Dyslin would be investigated; (2) the bank also assured plaintiff that an investigation had been made and that Dyslin met the SBA loan requirements; (3) that the representations were untrue and that the bank knew them to be untrue since the bank never investigated Dyslin as required by law and the bank knew Dyslin did not meet the SBA loan requirements; (4) that plaintiff relied upon those misrepresentations; (5) that the bank intended plaintiff to rely on its misrepresentation because the bank received financial benefits by granting and administering SBA loans, and based on these statements, the plaintiff extended credit to Dyslin; and (6) because of plaintiff's reliance on the bank's misstatements, he suffered damages.

■ Plaintiff has properly pleaded a cause of action for fraudulent misrepresentation. The complaint sets forth with specificity what the representations were, when they were made, by whom they were made, and to whom they were made. (See, *e.g., Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 376.) Therefore, the trial court erred in dismissing this count.

The bank argues that the allegations in count II are insufficient to show the falsity of the statements attributed to the bank because the pleadings are inconsistent. On one hand the pleadings recite that the bank sent notice that Dyslin's application for an SBA loan had been approved, yet the pleadings do not state that the bank failed to investigate Dyslin.

The bank's argument relies on semantics. The complaint, when read as a whole, states that the bank's improper and inadequate investigation into Dyslin's financial affairs and past business experience amounted to no investigation at all. While the complaint is complicated, it is not so confusing or contradictory as to justify dismissal.

■ Plaintiff next argues that count III, based on negligent misrepresentation, was improperly dismissed. Relying on *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, defendant contends that plaintiff's damages are limited to economic loss and,

therefore, not recoverable in tort.

The *Moorman* court reasoned that the law of contracts is appropriate and sufficient to govern the economic relations between suppliers and consumers. (91 Ill. 2d 69, 88.) Two exceptions to the general rule prohibiting recovery of economic losses in tort were enumerated by the court. Plaintiff claims one of those exceptions is applicable here: where one who is in the business of supplying information for the guidance of others in their business transaction makes negligent misrepresentations. (91 Ill. 2d 69, 88-89.) Because of our resolution of the duty requirement, however, it is unnecessary to resolve this contention.

As in any action for negligent conduct, the plaintiff must plead that the bank had a duty to conform to a certain standard of conduct. The first question to address, therefore, is whether the bank owed a legal duty to plaintiff. Whether there is a legal duty in this case is a question of law that must be determined by this court. *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480.

Since this is a case where a third party relies upon a defendant to his detriment, *Rozny v. Marnul* (1969), 43 Ill. 2d 54, which was cited by *Moorman* as an exception to the rule of economic-loss recovery in tort (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88-89), and *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, provide the guidelines needed to resolve whether the bank owes a duty to plaintiff. Neither the parties' research nor our own has found authority which defines the duty owed by a bank to a third-party creditor.

In *Rozny*, a land surveyor, who had been employed by a prior owner of land acquired by a third-party purchaser, was held liable to the purchaser who had relied upon the survey. The court extended a duty to the surveyor premised upon the pleadings and proof of an absolute guarantee of accuracy made by the surveyor and the intended reliance by the third party who was known to him. *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 67.

In *Pelham*, the court determined there could be a duty owed by an attorney to a third party who was not his client based upon whether the attorney was acting at the direction of or on behalf of his client to benefit or influence a third party. Analogizing the scope of the duty to the concept of a third-party direct beneficiary, the court stated: "[T]here must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party." *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 23; see also *Brumley v. Touche Ross & Co.* (1984), 123 Ill. App. 3d 636, 642 (where this court applied the "intent to directly benefit" standard to

hold that a duty is owed to third parties by an accountant).

■ We conclude that a bank does not have a legal duty to a third-party creditor for negligently investigating the financial qualifications of a borrower. Unlike the certified public accountant and the surveyor who both certify and guarantee their work knowing that other persons will rely on their expertise, a bank's only obligation flows between the bank and its borrower. A bank does not have the expertise that an accountant or a surveyor has; it does not certify or guarantee its work. A banker deals only with a borrower by gathering the information necessary to help it determine whether the borrower is creditworthy. Any creditor could conduct its own credit investigation. Moreover, any number of creditors may receive the proceeds of a loan. Absent a contractual obligation, a bank has no control over who ultimately receives the proceeds. Furthermore, we cannot hold a bank liable simply because a borrower does not pay one of those creditors.

■ We conclude that a representation by a bank that it extended a loan based on its credit investigation was not intended to directly confer a benefit upon a third-party creditor. To impose such a duty would create a situation of overwhelming potential liability. Without this duty, the bank cannot be liable under any negligent count. The trial court's dismissal of the negligent misrepresentation count (III) and the negligence count (V) was, therefore, properly granted.

■ Plaintiff next contends the well-pleaded facts concerning the nature of the SBA loan transaction, the terms of the loan transaction itself, and the conduct and knowledge of the bank are sufficient to show that he was an intended third-party beneficiary as pleaded in count IV.

The law of Illinois is that a third party is a direct rather than an incidental beneficiary only if the contracting parties have manifested in their contract an intention to confer a benefit upon the third party. *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54; *Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 396-97.

> "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 258.

Since plaintiff predicates his claim upon his status as a third-party

beneficiary of the contract between Dyslin and the bank, he must allege facts which show an intent on the part of the bank to confer the benefit. This normally would be expressed in the agreement between Dyslin and the bank. Here, the contract is not a part of the record. Additionally, the complaint alleges, without specific facts, that under the contract the parties intended to benefit plaintiff, that the bank was specifically advised of the costs of improvements plaintiff would and did make to the leased premises, and that the bank expressly told plaintiff that there would be sufficient funds from the loan transaction to pay for the improvements. However, it is not enough that the parties to the contract know, expect, or even intend that others will benefit. The contract must be undertaken for plaintiff's direct benefit, and the contract itself must affirmatively make this intention clear. *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373.

Plaintiff argues, citing *Reconstruction Finance Corp. v. Bairstow* (7th Cir. 1944), 140 F.2d 353, that it is not necessary that a third-party beneficiary be named in the agreement. However, that decision was predicated on a guaranty agreement which injured a beneficial interest of the third party as a holder of certain bonds. (140 F.2d 353, 354.) In this case, because the loan agreement is not of record it cannot be ascertained, even if plaintiff is not specifically named, that plaintiff is a third party by description of the class intended to be benefited. See *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 55-56.

■ Plaintiff finally contends under this claim that he has adequately identified the terms of the SBA loan transaction which the bank breached and because these terms are imposed by operation of law in all SBA loan transactions, the specific terms of any additional agreements between Dyslin and the bank are unimportant. However, plaintiff does not cite, nor does our research reveal, any cases in support of the proposition that such terms of a contract are imposed by operation of law.

On the facts pleaded here, plaintiff is not an intended third-party beneficiary as a matter of law. Therefore, the complaint as to count IV was properly dismissed.

The judgment of the trial court is reversed, and the cause is remanded as to count II only; the judgment is affirmed as to counts III, IV, V.

*Affirmed in part and reversed in part and remanded.*

NASH, P.J., and HOPF, J., concur.