Garsh, J.
Plaintiff, Industrial Sewing Services, Inc. (“Industrial”), a supplier of industrial sewing equipment, commenced this action seeking monies owed to it for goods delivered by Industrial to Performance Products, Inc. and Performance Apparel, Inc. d/b/a Team USA, (“Team USA”). Team USA is not a party. Plaintiff makes two claims against the defendants City of North Adams (“City”) and the Commonwealth of Massachusetts: breach of contract — the contract being a loan agreement between the City and Team USA — and promissory estoppel. The City and the Commonwealth now move for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, their motions are ALLOWED.
BACKGROUND
The following facts are undisputed. In October of 1992, the Commonwealth’s Executive Office of Communities and Development (“EOCD”) awarded the City an Economic Development Set-Aside grant in the amount of $300,000. In turn, the City, which is a municipal corporation with a “Plan A” form of government, issued a letter of commitment to Team USA, a clothing manufacturer, for a loan in the amount of the grant. The letter of commitment states that Team USA was to use its best efforts to create new jobs with the stated “objective that at least 51% of these jobs benefit persons from low and moderate income households.” The letter contains no reference to any objective of benefitting Team USA’s suppliers, nor does it promise to provide payment to Team USA’s suppliers. Team USA and the City subsequently executed a secured term loan agreement and Team USA simultaneously executed a commercial prom-issoiy note payable to the City for the principal amount of $300,000. The loan agreement, which was signed by the Mayor, contains a preliminary statement to the effect that Team USA is desirous of financing the acquisition of equipment and machinery to be used in the manufacture of clothing apparel with funds borrowed from the City. The loan agreement requires Team USA to submit to the City, prior to any disbursements of loan proceeds, invoices or paid receipts itemizing the business machinery and equipment to be used in connection with the borrower’s business. The loan agreement does not state that funds are to be paid directly by the City to the suppliers. It contains no promise to satisfy any obligation of Team USA to any particular supplier or to suppliers in general.
When Team USA purchased equipment from the plaintiff and other suppliers, it would submit an invoice to the City. Thereafter, a draw-down request would be submitted to EOCD. EOCD would forward a check, pursuant to the draw-down request, to the City; that check was deposited into Team USA’s account, and a check was then disbursed to the vendor. In accordance with this procedure, on two occasions prior to October 21, 1993, Industrial made shipments to Team USA and received payment. On October 21, 1993, Industrial shipped sewing equipment to Team USA. It sent an invoice, but no payment has been forthcoming.
The nature of the contacts between the City and Industries prior to the plaintiffs shipments is disputed. The dispute is not material because the defendants allege that even, assuming the facts related by Industries are true, the defendants still are entitled to summary judgment. Industries contends that, prior to the first two shipments, its President spoke with a City employee who verified the City’s intent to pay for the equipment being shipped. Several months prior to the third and final shipment, according to the deposition testimony of Industrial’s president, he inquired of the City’s Fiscal and Compliance Officer about whether there were sufficient loan funds to cover the cost of *475 another shipment of equipment and was told that there were. The president also testified that just prior to the shipment, he spoke with the same individual who verified that funding was still available. The verified complaint, signed by the president, states that, in addition, the individual with whom he spoke made a promise to pay the plaintiff directly. It is undisputed that the Fiscal and Compliance Office is not authorized by the City to enter into any contracts or agreements of any kind.
Whether Team USA was in default under the loan agreement at the time of the October shipment is in dispute. The defendants are willing to assume, for purposes of their motion, that Team USA was not in default.
DISCUSSION
A. Count I
Count One of the complaint alleges that Industrial entered into a binding agreement with the defendants in which the plaintiff promised to ship certain equipment to Team USA in exchange for the defendants’ promise to pay. In response to both the City’s motion for summary judgment arguing that any such municipal contract would violate G.L.c. 40, §4[2] and c. 43, §29[3] because it was not made by a duly authorized officer, not approved by the mayor, and not in writing, and to the Commonwealth’s motion for summary judgment arguing that a municipal employee lacks statutory authority to bind the Commonwealth and that such an agreement would constitute a pledge of the Commonwealth’s credit in violation of section 1 of Article 62 of the Amendments to the Massachusetts Constitution[4] and, in any event, be unenforceable pursuant to G.L.c. 259, §1[5] and c. 259, §4,[6] Industrial countered that it may maintain an action for breach of contract because it is a third party beneficiary of the loan agreement entered into by the City and Team USA. Its memorandum in opposition to the defendants’ motions for summary judgment, as well as the oral argument on those motions, make clear that, at this point, Industrial’s contract claim is solely premised on its status as a third party beneficiary. EOCD is alleged to be liable on the third party beneficiary theory based upon the contention that the City acted as EOCD’s agent in entering into the loan agreement.[7]
The City maintains that a third-party beneficiary claim cannot be lodged against a governmental entity. That argument is unfounded. See Ayala v. Boston Housing Authority, 404 Mass. 689 (1989) (tenants allowed to maintain action as intended beneficiaries of a contract between the Boston Housing Authority and the United States Housing and Urban Development Agency).
Industrial’s third party beneficiary claim founders not because of the identity of the defendants but because the plaintiff has failed to produce any evidence that it was an intended beneficiary of the contract between the City and Team USA, an essential prerequisite to recovery. Flattery v. Gregory, 397 Mass. 143, 148 (1986); Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982). See also Restatement (Second) of Contracts §302 (1981),[8] “a formulation followed by our courts.” Macksey v. Egan, 36 Mass.App.Ct. 463, 468, rev. denied 418 Mass. 1104 (1994).
Usually it is assumed that contracting parties “ ‘bargain and agree for themselves and only incidentally for third persons.’ ” Macksey v. Egan, 36 Mass.App.Ct. at 468 (stockholder was merely incidental beneficiary of company’s reorganization plan). However, that assumption can be overcome with evidence sufficient to demonstrate that it was the intention of the parties to give the benefit of the performance to a third parly. Id. The intent of the contracting parties determines whether a third party is an incidental or intended beneficiary. Choate, Hall, & Stewart v. SCA Services, Inc., 378 Mass. 535, 543-44 (1979), decided on remand 22 Mass.App.Ct. 522 (1986). The “requisite manifestation of the parties’ intent may be evinced in the context, as well as the text, of the contract.” Public Service Co. v. Hudson Light & Power Dept., 938 F.2d 338, 342 (1st Cir. 1991). See also Choate, Hall & Stewart, 378 Mass. at 546 (“We search for indicia of intention against the background of the transaction”).
Illustration 3 to the Restatement (Second) of Contracts §302, which is cited with approval in Flattery v. Gregory, 397 Mass. at 149, makes clear that loan agreements do not confer third party beneficiary status on persons who simply expect to be paid from loan proceeds. It states: “B promises A to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries under Subsection [l][a]; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries.” Consisitent with this illustration, several courts have rejected third party beneficiary claims purportedly arising out of loan agreements. E.g., Taylor Woodrow Blitman Construction Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 343-44 (D.Mass. 1982) (general contractor, to whom there was no binding promise to pay, is not a third party beneficiary of building loan agreement between owner and lender); Popp v. Dyslin, 149 Ill. App. 3d 956, 500 N.E.2d 1039 (1986) (lessor, who had expended significant sums on capital improvements with the expectation that he would be reimbursed by the lessee through the proceeds of a small business loan, could not recover damages as a third party beneficiary to the loan agreement between bank and the lessee); Khabbaz v. Swartz, 319 N.W.2d 279 (Iowa 1982) (seller was, at best, incidental beneficiary of loan commitment to prospective purchaser which did not expressly undertake to do anything for vendor). Cf. Broten v. Bankers Trust Co., 65 N.Y. 2d 155, 456 *476 N.E.2d 802 (1983) (suppliers induced to “gear up” their facilities to supply purchaser are, at best, incidental beneficiaries with no right of action against bank for its breach of promise to continue credit to purchaser until specified date); Payne v. United States, 336 F.Supp. 1008 (S.D. Tex. 1971) (sellers of property held to be only incidental beneficiaries of a commitment issued by the FHA to a bank in which the FHA promised to insure the loan given by the bank to the buyer of the property, and thus could not recover from the FHA when its commitment was withdrawn and the contract, which had been conditioned on such a commitment, could not be carried out).
Industrial points to nothing in the text or the context of the governing agreement that could support a reasonable fact finder’s conclusion that there was an intent that suppliers in general, or Industrial in particular, be given a right to enforce performance of the agreement. It was the intention of the City and EOCD to create jobs and support economic development in the community, and it was the intended goal of Team USA to operate a viable business. The loan was intended to enable Team USA to purchase equipment necessary to the operation of its business. Benefitting suppliers was “merely a means to the fulfilment of the parties’ purpose or a foreseeable consequence of the fulfilment.” Macksey v. Egan, 36 Mass.App.Ct. at 469. The contract does not bind the City to pay, up to the amount of the loan, whatever debts Team USA may incur in its undertaking. The contract does not promise to pay anyone to whom Team USA may become indebted.[9] Rather, any benefit to Industries resulting from the loan agreement is consequential. “Massachusetts courts steadfastly have refused to accord intended beneficiary status under a contract whose terms, interpreted in the particular transactional setting, do not provide for the benefits of performance to flow directly to the third party.” Public Service Co. v. Hudson Light & Power Dept., 938 F.2d at 343.
Because Industrial is at most an incidental beneficiary, it does not matter whether or not the City was acting as EOCD’s agent in entering into the loan agreement. See Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass.App.Ct. 479 (1988) (whether an agency relationship exists is a question of fact better left to the jury). If, as the court concludes, the plaintiff is not an intended beneficiary under the loan agreement, Industrial cannot maintain a cause of action against either the City or EOCD.
B. Count II
Count Two of the complaint asserts a right to payment based upon reliance. That count is based upon purported assurances by an employee of the City to the plaintiff prior to shipment that the October 21, 1993 invoice would be paid. In order to recover on its reliance claim, the plaintiff must demonstrate that the defendant made a commitment to the plaintiff that it would be paid, that the plaintiff took action in reasonable reliance upon that commitment, and that the action taken resulted in harm to the plaintiff. Rhode Island Hospital Trust Nat’l Bank v. Varadian, 419 Mass. 841, 846 (1995).
The record does not warrant an inference that the action taken by Industrial — shipment of goods to Team USA — was made in reasonable reliance upon the alleged representations of a City employee. The City has a Plan A form of government. Whatever representations were made were not in writing, not approved by the mayor, and not made by a person with authority to enter into a binding contract. Industries knew or should have known of the legal restrictions on the formation of government contracts. “Persons dealing with a municipality must take notice of the limitations of this kind upon the contracting power of the municipality and are bound by them and cannot recover upon contracts attempted to be made in violation of them.” Adalian Brothers, Inc. v. Boston, 323 Mass. 629, 631 (1949). See also White Construction Co., Inc. v. Commonwealth, 11 Mass.App.Ct. 640, 648 (1981), aff'd 385 Mass. 1005 (1982) (“[Piersons who deal with a governmental agency must take notice of limitations upon that agency’s contracting power and cannot recover upon a contract which oversteps those limitations”).
Even if the alleged reliance by Industries were reasonable, which it is not, the public interest in adherence to statutory contracting requirements renders the plaintiffs cause of action based upon reliance unavailable. When application of the doctrine of estoppel would, as here, frustrate processes ordered by the Legislature, the public interest “overrides the equities that would appropriately be considered in a purely private transaction.” Phipps Prods. Corp. v. Massachusetts Bay Transp. Authority, 387 Mass. 687, 693 (1982). “[T]he rule against applying estoppel to the sovereign continues almost intact where a government official acts, or makes representations, contrary to a statute or regulation designed to prevent favoritism, secure honest bidding, or ensure some other legislative purpose.” McAndrew v. School Committee, 20 Mass.App.Ct. 356, 361 (1985) (emphasis supplied). Prohibiting Industries from maintaining a suit, predicated upon reliance, against the City and the Commonwealth[10] preserves the contracting laws designed to protect the public interest.
ORDER
For the reasons set forth above, it is hereby ORDERED that the motions for summary judgment of the defendants City of North Adams and the Commonwealth of Massachusetts be ALLOWfED.

“A city . . . may make contracts for the exercise of its corporate powers, on such terms and conditions as are authorized by .. . the city council in a city with the approval of the mayor ... or as otherwise authorized in accordance with a duly adopted charter. A city . . . may not contract for any purpose, on any terms, or under any conditions incon *477 sistent with any applicable provision of any general or special law.”

“A11 contracts made by any department, board, or commission where the amount involved is five thousand dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor under Plan A... and also of the officer or the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto,”

“The commonwealth may give, loan or pledge its credit only by a vote, taken by the yeas and nays, of two-thirds of each house of the General Court present and voting thereon. Credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed."

“No action shall be brought... to charge a person upon a special promise to answer for the debt... of another . . . unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.”

“No action shall be brought to charge a person upon or by reason of a representation or assurance made concerning the . . . credit... of any other person, unless such representation or assurance is made in writing and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized.”

Notice pleading requires a pleader to “set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recoveiy under some actionable legal theory.” American Glue & Resin, Inc. v. Air Products & Chemicals, Inc., 835 F.Supp. 36, 40 (D.Mass. 1993). There are no allegations in the complaint that the contract between the Cify and Team USA was intended to benefit Industries directly and that it was not merely an incidental beneficiary, and there are no allegations that tire City was acting as agent for EOCD. The defendants did not object to the form of the plaintiffs belated assertion of a third-party beneficiary claim and, even if Industrial did not comply with Mass.R.Civ.P. Rule 8, no prejudice will result to the defendants from construing Count One as having been amended to assert a third party beneficiary claim.

Section 302 provides: “[1] Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. [2] An incidental beneficiary is a beneficiary who is not an intended beneficiary.” Here, the performance by the City of the promise to Team USA would not satisfy an obligation of Team USA to pay money to Industries; it would merely give Team USA the wherewithal to satisfy that obligation.

Contrast Restatement (Second) of Contracts §308 illustration 2 (“B promises A to pay anyone to whom A may become indebted for the purchase of an automobile. A buys an automobile from C. B is under a duly to C”).

The reliance count against the Commonwealth is premised on the assumption that the City was acting as agent for EOCD when it made the representations to Industrial.