**In re CROWN–SIMPLIMATIC INCORPORATED, et al., Debtors.**

**ADCOR Industries, Inc., Plaintiff,**

**v.**

**Crown–Simplimatic, Inc., Simplimatic Engineering Co., Crown Precision Technologies, Inc., Eko of Delaware, Inc., and Bank of America, N.A. Individually and as Agent and representative of Debtor's Lenders, Defendants.**

**Bankruptcy No. 00–2255(PJW). Adversary No. 02–01967.**

United States Bankruptcy Court, D. Delaware.

Sept. 3, 2003.

Neil B. Glassman, Steven M. Yoder, Ashley B. Stitzer, The Bayard Firm, Wilmington, DE, David E. Morrison, Roger A. Lewis, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Bank of America, N.A.

Henry A. Heiman, Heiman, Aber, Goldlust & Baker, Wilmington, DE, Michael J. Collins, Thomas & Libowitz, P.A., Baltimore, MD, for Adcor Industries, Inc.

Laura Davis Jones, Christopher J. Lhulier, Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C., Wilmington, DE, Geoffrey S. Irwin, Kirkland & Ellis, Washington, DC, for Crown–Simplimatic, Inc., Simplimatic Engineering Co., Crown Precision Technologies, and Eko of Delaware, Inc.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motions to dismiss filed by defendant Bank of America, N.A. ("Bank") (Doc. #2) and

defendants Crown–Simplimatic, Inc. et al.[1] ("Debtors," and with Bank, "Defendants") (Doc. # 7). Adcor Industries, Inc.'s ("Adcor") adversary complaint asserts eight separate counts arising out of Debtors' post petition sale of assets pursuant to an Asset Purchase Agreement ("APA"). The counts include breach of contract, fraud, negligence, tortuous conduct and demands for compensatory and punitive damages. For the reasons set forth below, I will dismiss Counts II–VIII of the complaint against Debtors and Counts I, II, IV, VI and VII against Bank.

## BACKGROUND

Debtors filed for bankruptcy protection on June 9, 2000. On November 27, 2000, Debtors conducted an auction for the sale of their manufacturing, container and material handling equipment and all associated intellectual property located at Debtors' Titusville, Florida and Bartow, Florida facilities. Adcor was the successful bidder and thereafter, pursuant to a sale order (Doc. # 398, Case No. 00–2255), Adcor and Debtors executed the APA.

Under the terms of the sale order, Bank's outstanding liens attached to the sale proceeds. At the APA's closing, Adcor paid Bank $2,113,903. APA Sections 3.7 and 7.9 contain details regarding Adcor's additional post-closing payment obligations and reporting requirements. Debtors contend that these two provisions required additional payments from Adcor totaling $2,247,561.16 by December 16, 2001. Adcor did not provide any of the quarterly or monthly statements as required and on August 22, 2001, Debtors notified Adcor, in writing, of its default. On November 29, 2001, in the chapter case, Debtors filed a motion to clarify the sale order and compel payment. *See* Doc. # 675, Case No. 00–2255.

On February 15, 2002, Adcor filed the present adversary proceeding alleging a failure of consideration for the intellectual property and claiming that Defendants resold the same intellectual property to other companies following the sale to Adcor. Adcor seeks recovery from Defendants on the basis of breach of contract, fraud in the inducement, negligent misrepresentation, conversion, negligence, unjust enrichment, civil conspiracy and punitive damages.

## DISCUSSION

■ Counts I (breach of contract) and II (fraud) against Bank will be dismissed. Bank was never a party to the APA and cannot be charged with breaching that agreement. In its opposition to the motion to dismiss, Adcor concedes that a breach of contract action against Bank is improper. *See* Doc. # 11 at 1. Regarding the fraud count, Adcor did not name Bank as a party.[2] Even after Bank pointed out this pleading deficiency, Adcor failed to seek approval to amend its complaint. Instead, Adcor attempted to plead against Bank through its opposition to Bank's motion to dismiss. *See* Doc. # 11 at 12. Since Count II has not been properly pleaded as to Bank it will be dismissed as to Bank.

*Breach of Contract (Count I)*

■ In the complaint, Adcor states that it did not receive the full consideration for

---

1. Debtors include Crown–Simplimatic, Inc., Simplimatic Engineering Co., Crown Precision Technologies, Inc. and EKO of Delaware, Inc.

2. Under "Count II—Fraud in the Inducement," Adcor states:

42. Debtors fraudulently or negligently induced Adcor to purchase the IP (and the Core Assets), since they knew or should have known that at the time of the Auction and Sale their employee, agent and/or servant, Mr. Gomez, had copied and transferred the trade secrets and IP sold to Adcor to BPE. Doc. # 1 at 9, ¶ 42.

its bargain and contends that Debtors failed to provide it with exclusive possession of the intellectual property. Adcor cites several examples it contends demonstrate a lack of consideration.

Adcor first focuses on Debtors promises to safeguard the intellectual property and their hiring of Mr. Luis Gomez, the former Titusville Plant manager, to oversee the intellectual property's safety and security. Adcor claims that it was prevented from checking on the intellectual property because Debtors' employees would only show Adcor's representatives the intellectual property storage location and would not allow Adcor to independently examine the intellectual property. *See* Doc. # 11 at 3, ¶ 10. Turning to Mr. Gomez, Adcor contends that Debtors failed to adequately secure the intellectual property as Mr. Gomez made several copies of the intellectual property and opened his own manufacturing business to compete directly with Adcor. *See id.* at ¶¶ 11, 30–31.

Second, Adcor claims that N.V. Crown–Baele, a Belgian corporation, is manufacturing and selling parts identical to those Adcor purchased from Debtors. In support, Adcor cites a letter, dated August 21, 2001, from Crown–Baele offering new machinery and parts based on the same intellectual property Adcor purchased from Debtors. In addition, Crown–Baele held itself out as Debtors' successor and the new Crown original equipment manufacturer. Based on that letter, Adcor asserts that Debtors resold to Crown–Baele the same plans and drawings that were sold to Adcor. *See id.* at ¶¶ 19–28.

Although they dispute Adcor's assertion of breach, Debtors concede that a valid agreement existed between Debtors and Adcor regarding the sale of the intellectual property. Because Debtors agree that the APA existed and governed the rights of the parties, Count I against Debtors will not be dismissed.

*Fraud in the Inducement (Count II)*

■ Adcor asserts fraud on the grounds that Debtors fraudulently induced Adcor's purchase of the intellectual property by failing to disclose Mr. Gomez's photocopying of the intellectual property.

Debtors first argue that Adcor's claim must fail because Adcor has not plead fraud with the particularity required by Fed.R.Civ.P. 9(b). In *Pardo, Trustee of FPA Creditor Trust v. Avanti Corporate Health Systems, Inc. et al. (In re APF Co. et al.)*, 274 B.R. 634 (Bankr.D.Del.2001), this Court noted that even though "a plaintiff must plead with particularity the circumstances of the alleged fraud, a plaintiff need not plead the 'date, place or time' of the fraud so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *See id.* at 638 (citing *Seville Indus. Machin. Corp. v. Southmost Machin. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Additionally, the Third Circuit has stated that Rule 9(b) requires a plaintiff to plead: "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) the plaintiff acted upon it to his damage." *See Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983).

Adcor presents the following allegations regarding Debtors' fraudulent misrepresentation of the facts surrounding the intellectual property: that Debtors knew or should have known Mr. Gomez copied the intellectual property. Adcor concludes that Debtors fraudulently misrepresented material facts associated with the sale of the intellectual property and falsely claimed that the intellectual property was

adequately secured. Even if Rule 9(b) is flexibly interpreted, Adcor has failed to specify which of Debtors' employees told Adcor's representatives that the intellectual property was secured. Adcor does not disclose when such statements were made, to whom they were made or even what the "fraudulently misrepresented material facts" associated with the intellectual property sale are. Additionally, Adcor failed to provide specific facts supporting its conclusory statement that Debtors knew or should have known that Mr. Gomez was copying the intellectual property, either for his employer's or for his own benefit. Adcor's only facts demonstrate that in conversations with Mr. Gomez, Mr. Gomez admitted to copying the intellectual property. Adcor has not plead facts sufficient to support the conclusion that Mr. Gomez's actions were encouraged by Debtors or that Debtors had any independent knowledge of Mr. Gomez's actions.

■ Debtors also seek dismissal of the fraud claim on the ground that Adcor's remedies are adequately addressed by the APA. Debtors cite to *Iotex Communications, Inc. v. Defries*, 1998 WL 914265 (Del.Ch. Dec. 21, 1998), for the proposition that a breach of contract claim "cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform." *See id.* at *5. In *Iotex*, the Delaware Chancery Court, citing New York law, dismissed the plaintiff's fraud and conspiracy to commit fraud claims. The court concluded that a claim for fraud could not stand in a breach of contract action unless the plaintiff demonstrated that the defendant was aware of or participated in a "false promise" that was collateral to, or outside of, the terms of the executed agreement. *See id.* at *6. In the instant case, Adcor does not allege, with any specificity, that Debtors knowingly

made a false promise outside the scope of the APA. Debtors promised to safeguard the intellectual property and hired Mr. Gomez to oversee security. *See* Doc. # 675, Case No. 00–2255, Ex. B at ¶ 9.5. Because these promises were encompassed in the APA, Adcor's fraudulent inducement count will be dismissed.

### Negligent Misrepresentation & Negligence (Counts III and V)

As against the Bank at this stage of the proceeding, neither Count III nor Count V will be dismissed. In its motion to dismiss, Bank argues that both the negligent misrepresentation and negligence claims are improper and should be dismissed because a bank's duty extends only to its borrower-customer and there is no independent duty toward third parties such as Adcor. *See* Doc. # 3 at 7–8 (citing *Popp v. Dyslin*, 149 Ill.App.3d 956, 102 Ill.Dec. 938, 500 N.E.2d 1039, 1042 (Ill.2d Dist.1986)). In addition, Bank argues that the economic loss doctrine, as adopted in Delaware, bars recovery because Adcor has not alleged any personal injury or property damage. *See id.* at 6–7 (citing *Danforth v. Acorn Structures, Inc.*, Case No. 90C–JN–30, 1991 WL 269956 (Del.Super. Nov. 22, 1991)). Here, Bank asserts that Adcor's losses are a result of increased competition in the beverage packaging market and are economic in nature.

Turning first to Bank's assertion regarding duty, I do not think *Popp* is applicable to the present case. In *Popp*, a third-party lessor sued lessee's bank for intentional misrepresentation, negligent misrepresentation and negligence. Under the terms of the lease agreement, lessor agreed to make improvements to the property and lease it to lessee provided lessee was able to secure a federal Small Business Administration loan. Lessor met with bank officials and informed them that

the lease hinged on the bank's determination of creditworthiness and extension of loan proceeds under the SBA program. The bank assured lessor that funds would be available if the lessee met the requirements for SBA loans. The bank later confirmed to lessor that lessee qualified for the SBA loan. Lessee then declared bankruptcy and failed to pay lessor. The bank also refused to pay lessor for the improvements lessor made to the property in reliance on the bank's creditworthiness determination. The *Popp* court concluded that a bank "does not have a legal duty to a third-party creditor for negligently investigating the financial qualifications of a borrower." *See Popp*, 102 Ill.Dec. 938, 500 N.E.2d at 1043. The court also noted that any creditor could conduct its own investigation into the creditworthiness of their borrower.

In Delaware, negligent misrepresentation has the following elements: "(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information." *See Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, Case No. 99C–09–151–JRS, 2001 WL 541472, at *5 (Del.Super. Apr. 12, 2001). The Delaware Superior Court noted that business relationships can give rise to a duty of complete disclosure where the parties expect to derive a financial benefit and where the relationship is more than a casual business relationship. *See id.*

*Popp* is not persuasive in the present matter because Adcor's complaint asserts that Bank and/or Debtors made affirmative assertions that the intellectual property was safe and secured in a special building at the Titusville plant. *See* Doc. # 1 at 3, ¶ 10. Adcor was not relying on Bank's determination of Debtors' credit-

worthiness. Adcor has also alleged the existence of something more than a casual relationship between Adcor and Bank. Both were involved in a complex asset sale and Adcor alleges it relied on Bank's statements regarding the safety and security of the intellectual property. In addition, Adcor alleges it was prevented from making its own investigation into the intellectual property by employees of Bank and/or Debtor and, therefore, had no choice but to rely on Bank's representations. These allegations are sufficient to survive a motion to dismiss as to Bank.

Turning to Bank's economic loss argument, it is unclear whether Adcor has suffered an economic loss. In its complaint, Adcor claims its damages arise from additional competitors and Adcor's inability to market itself as the authorized agent of Crown. While this statement may seem dispositive, Adcor also argues that the value of the intellectual property has diminished. In light of these arguments, it seems improper to dismiss this claim as to Bank solely on the bases of economic loss doctrine at this stage of the proceeding.

Adcor's negligent misrepresentation and negligence claims are grounded in Debtors' alleged failure to provide Adcor with exclusive possession of the intellectual property and for failing to adequately secure the intellectual property prior to the sale. Debtors assert that the two negligence claims fail because Delaware has adopted the economic loss doctrine and because Debtors did not owe a duty to Adcor independent of the APA. Debtors argue that a claim sounding in negligence requires the plaintiff to "show that the duty owing from the defendant to the plaintiff is a legal duty independent of the parties' underlying contractual relationship." *See Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, Civ. A. No. 88–391–SLR, 1992 WL 391154, at *10

(D.Del. Dec. 14, 1992) (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193–94 (1987)). In addition, Debtors note that the legal duty must arise from extraneous circumstances not related to the elements of the contract. *See Clark–Fitzpatrick,* 521 N.Y.S.2d 653, 516 N.E.2d at 193–94.

Debtors' duties are adequately addressed in the APA and both the negligent misrepresentation and negligence claims will be dismissed. Each party represented and warranted that the APA would be binding on them. *See* Doc. # 675, Case No. 00–2255, Ex. B, at ¶ 5.1. Debtors agreed to provide Adcor with title to the intellectual property free and clear of encumbrances. *See id.* at ¶ 5.3. In addition, Debtors covenanted that reasonable efforts would be used to maintain the intellectual property in its current state. *See id.* at ¶ 7.1. Debtors could not dispose of, alter or transfer the intellectual property outside of the ordinary course of business or without the approval of the bankruptcy court. *See id.* The Court reads these provisions as requiring Debtors' to provide clear title to, and exclusive possession of, the intellectual property. In accordance with this reading, the Court has concluded that Debtors' legal duties were adequately addressed by the APA and there exists no other independent duty capable of supporting either negligence-based claim as to Debtors.

*Conversion (Count IV)*

■ Conversion is defined as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *See Century Nat'l Bank v. Makkar,* 132 Md.App. 84, 751 A.2d 1, 4 (Md.Ct.Spec.App.2000). In order to be found liable for conversion, Bank is required to have exercised dominion and control over the intellectual property. Adcor's contention that Bank converted the intellectual property by allowing others to exercise dominion and control over the intellectual property is insufficient to satisfy the definition of conversion.

■ Adcor also asserts Bank is liable for conversion because of Bank's "overarching lien on all of the Crown defendants' assets, as well as the assignment of intellectual property rights by Crown to the Bank for security purposes" constituted conversion. *See* Doc. # 11 at 16–17. The taking or recording of a security interest in property is not equivalent to converting the property. *See Century Nat'l,* 751 A.2d at 4 (citing 18 Am.Jur.2d *Conversion* § 36 (1985)). Because Adcor relies on Bank's lien and security interest when asserting liability for conversion, Adcor's conversion claim will be dismissed as to Bank.

■ Adcor and Debtors were parties to a valid contractual agreement and based on the existence of the APA, Adcor's conversion claim against Debtors must be dismissed. *See Clark–Fitzpatrick,* 521 N.Y.S.2d 653, 516 N.E.2d at 193–94; *see also D'Ambrosio v. Engel,* 292 A.D.2d 564, 741 N.Y.S.2d 42, 44 (N.Y.App.Div.2002) (dismissing conversion claim because plaintiff's relief was more appropriately found in breach of contract action). Adcor's complaint alleges Debtors converted the intellectual property because Debtors retained or permitted others to retain copies of the intellectual property after the sale to Adcor. Adcor's conversion claim relies on the same assertions made under its breach of contract claim: that Adcor did not receive the benefit of its bargain because Debtors did not provide Adcor with exclusive rights to the purchased intellectual property. Because these arguments are adequately addressed by Adcor's

breach of contract claim, the conversion claim against Debtors will be dismissed.

*Unjust Enrichment (Count VI)*

In asserting a claim of unjust enrichment, Adcor relies exclusively on its conversion claim to provide the basis for recovery. Adcor seeks recovery because of Bank's retention of the intellectual property or its permitting others to retain copies of the intellectual property. Because the Court has already determined that Adcor's conversion claim against Bank will be dismissed, the unjust enrichment count will likewise be dismissed.

 The unjust enrichment count will also be dismissed as to Debtors. Adcor alleges that Debtors were unjustly enriched from selling or allowing other companies to retain and use copies of the intellectual property purchased by Adcor pursuant to the APA. *See* Doc. # 1 at 11, ¶ 56. Debtors respond that unjust enrichment is a quasi-contract form of relief and is unavailable when a contract governing the relationship exists. *See* Doc. # 8 at 10. Adcor's response focuses on the elements of unjust enrichment and attempts to show how each element was satisfied from the fact section of Adcor's complaint. *See* Doc. # 11 at 17–18.

Debtors' arguments are persuasive and supported by case law. In *Resource Ventures, Inc. v. Resource Management International, Inc.*, the Delaware District Court addressed the issue of whether breach of contract and unjust enrichment may be alleged in the same complaint. *See* 42 F.Supp.2d 423, 439–40 (D.Del.1999) The District Court, citing a Delaware Supreme Court opinion, concluded that when a contract exists, the contract governs the rights of the parties and neither party is entitled to recover under a theory of unjust enrichment. *See id.* at 439 (citing *Wood v. Coastal States Gas Corporation et al.*, 401 A.2d 932, 942 (Del.Supr.1979)). Here, Adcor has asserted the existence of a binding contract and Debtors, while challenging the breach of contract claim, do not challenge the APA's existence. Because a binding contract exists that adequately addresses each party's rights and duties, Adcor cannot recover under the quasi-contractual theory of unjust enrichment.

*Civil Conspiracy (Count VII)*

 Under Delaware law, "civil conspiracy cannot be sustained as an independent tort, but rather the allegations must relate to the completion of a tort independent of the conspiracy itself." *See Outdoor Techs.*, 2001 WL 541472 at *6 (citing *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del.Super.1986)). In Adcor's complaint, Adcor seeks to hold Defendants liable for conspiring to defraud and deceive Adcor as to the security and value of the purchased intellectual property. Because the underlying fraud count is being dismissed as to both Bank and Debtors, Adcor's conspiracy claim cannot stand.

*Punitive Damages (Count VIII)*

Although Bank asserts Adcor failed to plead an unlawful act or bad faith conduct on the Bank's part, to the extent Adcor is able to meet its burden regarding the two negligence counts, recovery of punitive damages may be possible as to Bank.

 As to Debtors, the claim must be dismissed because punitive damages are not normally allowed in a breach of contract action. Because all other tort related claims have been dismissed and because both Adcor and Debtors acknowledge the APA's existence, Adcor's punitive damages claim against Debtors will be dismissed.

**CONCLUSION**

In summary, all non-contract claims (Counts II through VIII) against Debtors

are dismissed. Adcor may proceed against Debtors only on its breach of contract theory (Count I). As against Bank, all non-negligence based counts are dismissed. Adcor may proceed against Bank on the theories of negligent misrepresentation (Count III) and negligence (Count V). To the extent Adcor demonstrates Bank was negligent, punitive damages may be possible.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date,

1. Debtors' motion to dismiss (Doc. # 7) is **GRANTED** as to Counts II through VIII.

2. Bank of America, N.A.'s motion to dismiss (Doc. # 2) is **GRANTED** as to Counts I, II, IV, VI and VII.